No. 8723.

THE BOARD OF SCHOOL COMMISSIONERS OF THE CITY OF
INDIANAPOLIS v. WASSON, TREASURER, ET AL.

CITIES AND TOWNS. — City Treasurer. — Compensation. — Statute Construed. — Taxes. — The act of March 11th, 1875, Acts 1875, Reg. Sess., p. 148, legalizing the assessment and collection of municipal taxes, was not designed to, nor did it in any way, change the law concerning the salary, compensation, fees or emoluments of city treasurers.

The Board of School Com'rs of Indianapolis *v.* Wasson, Treas., *et al.*

SAME. — *Salary of City Treasurer.* — *Statute Construed.* — *Taxes.* — *School Commissioners.* — By section 51 of the act for the incorporation of cities, 1 R. S. 1876, p. 267, city treasurers are to be paid for general services a salary to be accurately determined and fixed on some certain basis by the city council. It may be a percentage on the taxes levied, but it can not be on the taxes collected during the year; nor are city treasurers entitled, in addition to such salary, to a percentage of the taxes collected by them, assessed by the city board of school commissioners, by the provisions of the act of March 3d, 1871, 1 R. S. 1876, p. 817, in relation to schools in cities of thirty thousand or more inhabitants.

SAME. — *Salaries of City Officers.* — There is no authority in said act of March 3d, 1871, for a city or its officers to charge any part of the salaries of its officers named in section 51, *supra*, against the taxes collected for the city school corporation.

SAME. — *Fees and Charges for Collecting Taxes.* — *Distress and Sale.* — The fees and charges allowed a city treasurer for the collection of taxes by distress and sale, by section 44 of the act for the incorporation of cities, are such only as are allowed constables on an execution sale, and do not include the percentage allowed county treasurers for similar services, and such fees and charges are collectible out of the property of the tax-payer in each case, and can be deducted from the amount of the tax, interest and penalty only in case the sum realized is insufficient to pay both.

SAME. — *Presumption.* — *Complaint.* — *Demurrer.* — Upon a demurrer to a complaint in an action by the board of school commissioners of a city, against the city treasurer, to recover school tax levied by them and claimed by such treasurer as fees and charges for collections made by distress and sale, it will be presumed that such officer levied on property sufficient to pay all that was due, including his own fees and charges.

From the Marion Superior Court.

*N. B. Taylor, F. Rand* and *E. Taylor,* for appellant.

*C. Baker, O. B. Hord, A. W. Hendricks, J. A. Henry* and *R. O. Hawkins,* for appellees.

WOODS, J.—The errors assigned bring before us for review the rulings of the superior court upon the demurrers to the complaint, whereby it was held that each paragraph of the complaint failed to state a good cause of action. The questions involved in these rulings are, however, not questions of pleading or averment, but entirely of statutory construction or interpretation, and we therefore deem it unnecessary to set out a copy of the complaint.

The Board of School Com'rs of Indianapolis *v.* Wasson, Treas., *et al.*

The following extracts from the opinion delivered at the special term state the case clearly, and, besides indicating the grounds on which the superior court reached its conclusions, will facilitate the presentation of the reasons on which the judgment of this court is based:

"The plaintiff is organized under the provisions of the act of March 3d, 1871, 1 R. S. 1876, p. 817, which provides for a general system of common schools in cities of thirty thousand or more inhabitants, and for common school libraries therein.

"By the second sub-section of section 4 of that act, the plaintiff is empowered 'To levy all taxes for the support of the schools within such city including such taxes as may be required for paying teachers in addition to the taxes now authorized to be levied by the General Assembly of this State by the general laws thereof.'

"The fifth section provides that all levies of taxes made by the board shall be certified to the city clerk, who shall cause the same to be placed on the tax duplicate, 'and the city treasurer shall collect the same as city taxes are collected, and shall once in each month pay over all such taxes so collected to the treasurer of the board of school commissioners of such city.'

"By the third section of the act of February 13th, 1877, Regular Session 1877, p. 15, the board is restricted to a levy of twenty cents on the hundred dollars; but a proviso allows the same levy for library purposes as did the act of March 3d, 1871.

"This action was instituted to recover a percentage on the amount of the school tax levied by the plaintiff, and which the defendant Wiles has detained, under claim thereto, as compensation for collection. The first paragraph of the complaint charges the detention of $1,217.11 as percentage for the collection of delinquent taxes in the sum of $24,250.60 paid voluntarily; the second and fourth charge the deten-

tion of $672.82 as percentage on $89,221.88 of current taxes collected; and the third of $992.08, on the sum of $16,543.74, which was the principal, damages, and interest of taxes delinquent and collected by seizure and sale, or sale of property.

"The legal sufficiency of the several paragraphs is questioned by the demurrer, and whether the latter is well taken must depend in the main upon the force and construction to be given to the various statutory provisions bearing upon the subject presented.

"The second section of the act of March 11th, 1875, 1 R. S. 1876, p. 338, provides that the general law of the State, and amendments thereto, for the uniform assessment of taxes, shall apply to all incorporated cities not having special charters, so far as applicable; and it is also provided that all city taxes shall be payable on or before the third Monday in April in each year.

"In the general law referred to—the act of December 21st, 1872—it is provided that after deducting the amount of taxes returned delinquent, and the collection fees allowed the treasurer, from the several taxes charged on the duplicate, in a just and ratable proportion, the treasurer shall be liable for the balance. Sub-section 5 of sec. 180, 1 R. S. 1876, p. 117. Although the section containing this provision was amended by the act of March 7th, 1877, Regular Session 1877, p. 142, the fourth sub-section is the same as that to which I have referred.

"By section 161 of the general law, the treasurer of the county is allowed five per centum on the amount of delinquent taxes collected without distraint and sale, payable in just proportion out of each fund collected, and is to be allowed constable's fees and mileage, which are to be collected from the taxpayers.

"The forty-fourth section of the general law relating to cities (act of March 14th, 1867, 1 R. S. 1876, p. 285,) provides:

'The treasurer shall be entitled to such fees for collections made by distress and sale, and charges for keeping and re-moving property distrained, as are paid to county treasurers for like services.'

"The fee and salary act now in force, and that of March 12th, 1875, 1 R. S. 1876, p. 467, provides, in section 14 there-of, that the treasurer shall, in addition to the general sal-ary allowed by section 13, charge and receive the further compensation of one per centum on the first $100,000 of taxes collected, and one-half of one per centum on all sums in excess thereof, which shall be paid from the moneys in the treasury belonging to the county, etc., and he shall receive and retain out of all delinquent taxes collected, five per centum when paid voluntarily and without levy, and six per centum if paid after levy ; and he is allowed the same fees and charges in case of distraint and sale of goods as received by constables."

After reciting these statutory provisions, the opinion and argument proceed in the main on the theory that, by force of the act of March 11th, 1875, the act of December 21st, 1872, for the uniform assessment and collection of taxes was made applicable to cities, not only in respect to the manner and time of making the assessment and collection of taxes, but also in respect to the compensation of city treasurers, the court holding that by reason of said enactments the city treasurer was entitled for collecting delinquent taxes to the same percentages, fees and charges as are allowed to county treasurers for like services, but that for collecting current taxes, though the county treasurer was allowed one per cent-um, the city treasurer was bound by the city ordinance which allowed three-fourths of one per centum.

We give verbatim so much of the act of March 11th, 1875, as can be claimed to bear upon the present subject of dis-cussion :

"An act legalizing the assessment, equalization, levy and

collection of municipal taxes for the years 1873 and 1874, providing that the general law governing state and county taxation, so far as the same provides for the manner and time of making the assessment and collection of taxes, shall apply to incorporated cities and towns, and declaring an emergency." Approved March 11th, 1875.

"Section 1. *Whereas*, There is no express provision in the act approved December 21st, 1872, entitled 'An act to provide for a uniform assessment of property, and the collection and return of taxes thereon,' that makes the same applicable to incorporated cities and towns ; And whereas, the general law governing cities, approved March 14th, 1867, for the incorporation of cities, provides a different time, mode and manner for the assessment, equalization, levy and collection of taxes by cities, owing to which uncertainty of application, some cities have acted under the one, and other cities under the other law, so that the assessment, levy, and collection have not been uniform ; therefore, *Be it enacted*," etc. This section proceeds to legalize, in the particulars referred to in the title and preamble, the acts of cities for the years 1873 and 1874.

"Sec. 2. Hereafter the general law of the state and amendments thereto, approved December 2d, 1872, for the uniform assessment of taxes, shall apply to all incorporated cities and towns not having special charters, so far as the same shall be applicable : *Provided*, That all city taxes shall be paid on or before the third Monday in April in each year."

The title of this act specifically indicates the extent to which it was proposed to apply the general law concerning taxation to cities and towns, and it may well be doubted, whether the text can be upheld, if it goes further than the title. *The State* v. *Bowers*, 14 Ind. 195.

We are, however, of the opinion that this act has no bearing on the questions before us. It was not, in our judgment, the design nor the effect of it, in any way, to change.

the law concerning the salary, compensation, fees or emoluments of city treasurers. The purpose of the enactment, as shown by its title, preamble and text, was to provide, "that the general law governing state and county taxation, so far as the same provides for the manner and time of making the assessment and collection of taxes, shall apply to incorporated cities and towns," except "That all city taxes shall be, paid on or before the third Monday in April in each year." If section 2, providing, as it does, that "Hereafter the general law of the state and amendments thereto, approved December 2d" (meaning clearly December 21st), "1872, for the uniform assessment of taxes, shall apply to all incorporated cities and towns not having special charters, so far as the same shall be applicable," stood alone for interpretation, without aid from the title or preamble, we should not deem the inference warranted that the compensation, salary, fees or percentages, allowed in favor of county treasurers, should thereafter, in whole or in part, be allowed to city treasurers for like services.

It is conceded that Indianapolis has no special charter, but is governed by the general law of cities, approved March 14th, 1867, 1 R. S. 1876, pp. 267–314, and by such amendatory and supplemental laws as have been since enacted. By section 8 of that act, "The officers of such city shall consist of a mayor, two councilmen from each ward, a city clerk, assessor, treasurer," etc., and by sections 31 to 44, inclusive, the general duties of the treasurer are defined. The 51st section provides that "The common council shall, within one month after the annual election in each year, fix the salaries of all the officers of such city, provided for in this act, and by ordinance provide for the payment of the same, which salaries shall be paid on the first day of January, April, July and October in each year, when so fixed, and shall not be increased during that year." A clause of section 44 declares that "The treasurer shall be entitled to such fees for collec-

tions made by distress and sale, and charges for keeping and removing property distrained, as are paid to county treasurers for like services ;" and section 71 allows such treasurer certain fees and commissions for collecting assessments for street improvements by sales of lots.

Besides these there are no provisions for the compensation of city treasurers, in the act concerning cities, and, in our opinion, these provisions remain in force, unaffected by the act of March 11th, 1875. The policy of the act of March 14th, 1867, was, that each city should fix the compensation of its own officers, and we think it clear that that policy has not been abandoned for the sake of substituting the uncertainties and impolicy of fee and salary legislation.

The inquiry before us, therefore, does not lead to a consideration of the various enactments which define the pay or commissions of county treasurers further than is required by the clause quoted above from section 44. We need determine only the proper construction of said sections 44 and 51, taken in connection with the act of March 3d, 1871, the provisions of which have been already stated sufficiently for our purpose. The appellant contends for a literal construction of the clause of that act which, speaking in reference to the taxes levied by the plaintiff, says "the city treasurer shall collect the same as city taxes are collected ;" while the appellees claim that there is an implied intent that, as an incident to the collection, the treasurer shall have the same pay for such collections as for collecting city taxes proper. This brings us to the question whether, in legal contemplation, there is any pay or compensation allowed the city treasurer, as an incident to his collecting the city taxes. In some degree, at least, the solution of this question depends on the proper construction to be given to the 51st section of the law of cities, whereby it is required that city officers be paid by salaries, to be fixed each year by the city council. It is admitted in one paragraph of the complaint, and con-

ceded or assumed in the briefs on both sides, that the common council of Indianapolis had provided by an ordinance, that the city treasurer should receive for collecting taxes not delinquent three-fourths of one per centum of the amount collected; and the question is raised and earnestly discussed whether this ordinance was within the power of the council to pass, and, if valid, whether it applied to the taxes collected for the plaintiff.

In the case of *Cowdin* v. *Huff*, 10 Ind. 83, the meaning of the word *salary* was considered, and it was there said:

"There are now, and were, at the adoption of our constitution, at least three modes in use of compensating persons engaged in the public service, viz., fees, salaries and wages. These modes are all different, each from the other; and the difference between them has been immemorially well understood. FEES are compensation for particular acts, or services, as the fees of clerks, sheriffs, lawyers, physicians, etc. WAGES are the compensation paid, or to be paid, for services by the day, week, etc., as of laborers, commissioners, etc. SALARIES are the *per annum* compensation to men in official and some other situations. The word *salary* is derived from *salarium*, which is from the word *sal*, salt, being an article in which the *Roman* soldiers were paid. See [the dictionaries of] *Richardson, Webster, Bouvier* and *Wharton*.

"Where the constitution does not provide otherwise, the State may adopt either of these modes of compensating those who may be in her service. But where that instrument does prescribe a mode, that mode must be followed."

It must be equally clear, that where the law prescribes the mode in which city officers shall be paid, that mode must be followed; and, as this judicial declaration of the meaning of the word in the constitution and laws of this State had been made before the enactment of the act of March 14th, 1867, we may fairly presume that the Legislature intended the same meaning of the word as used in section 51 of that act.

Looking to the dictionaries, we find in *Webster's Unabridged* the word "salary" is defined to be "the recompense or consideration, stipulated to be paid to a person for services ; annual or periodical wages or pay ; hire ;" and the synonyms given are, "stipend ; pay ; wages ; allowance ;" and in *Worcester's Dictionary* the definition is, "An annual or periodical payment for services, a stipulated periodical recompense ; a stipend ; wages ; hire ; an allowance." But the context in which the word is used in section 51, aside from authority, leaves no room for debate as to the meaning there intended. An annual salary was meant, of a fixed amount, payable quarterly (in equal instalments), and not to be increased during the year for which it was fixed.

It may be, as contended by counsel for the appellees, that this requires only that the amount of the compensation be fixed, and does not "limit, qualify or restrict the power of that body to determine in its discretion the character of that compensation, of what it shall consist, and from what source to come." It must, however, consist of money, derived from sources within the lawful control of the city, and the amount must be specifically stated ; or, if an attempt be made to fix the salary by an allowance of percentages, the percentages must be allowed on determinate sums, so that the total amount of the salary shall be certain and knowable at the time when fixed. It may be a percentage on the taxes levied, but it can not be on the taxes collected during the year, because that would be uncertain until the end of the year. But it is plain that the Legislature contemplated no such indirect way of fixing a salary ; and a salary, whether so fixed or given directly in a sum stated, could not be deemed an incident so connected with the collection of the city taxes as that when the act of March 11th, 1875, was passed, containing the provisions under consideration, it could have been intended to enlarge that salary in proportion to the amount of taxes collected for or levied by the plaintiff, or that the

plaintiff should be liable for a pro rata share of the salary, whether fixed in one way or the other. The constitution requires that the laws be uniform. Counsel for the appellee admit that section 51 is not repealed, and that the city council may still fix a salary for the city treasurer, but claim that such treasurer may, if the common council see fit to so order, receive a percentage, to be fixed by an ordinance, for collecting current taxes not delinquent. Whither does the reasoning lead us? The argument is that the percentage so fixed for collecting the city tax proper becomes an incident of the collection, and that by force of the act of March 3d, 1871, it becomes also an incident to the collection of the taxes of the plaintiff. But one city may allow one percentage and another city another, while yet other cities may allow their treasurers no percentage at all, and so the school corporation of one city will be compelled to pay one rate, and of another city another rate, and others yet perhaps nothing, for the collection of their taxes, or, if anything, then a proportionate part of the fixed salaries allowed their treasurers; but, for determining that proportionate part, no rule has been suggested, and we know of none. Indeed, a uniform operation of the law, upon the theory of the appellees, seems to be entirely impracticable. The plain legislative intent manifested in said section 51 is that the council of each city shall fix the salaries of its officers according to the duties and responsibilities of each, and with reference to such other considerations, such as the expenses of living, the financial condition of the city, and the like, as the council in each case may deem proper to take into account; and when the act of March 3d, 1875, was passed, imposing on city clerks and treasurers the duties required of them in relation to the taxes assessed by the school boards, it was not designed to give either of them any claim for services against the school corporation, nor yet was it intended that they should do the work without compensation, but that the salaries allowed

them from year to year should be adjusted according to the work required of them, including the services so required. This does the city no harm, for the same people who pay the city taxes proper pay the school taxes also, and the result is ultimately the same to them whether the compensation of the officers comes from one fund or another. There is, therefore, no reason for putting a strained construction on the law, and there is no authority expressed, or which can arise by fair implication, for the city or its officers charging any part of their salaries against the taxes collected for the school corporation, all of which the law expressly requires to be paid over monthly to the board of school commissioners. It is no answer to this to suggest that the requirement to ''pay over all such taxes so collected'' does not include the interest and penalties charged against delinquents, and that these exceed the amounts retained by the defendants out of the taxes collected for the plaintiff. The interest and penalties, when accrued or added, are a part of the taxes to which they are incident, and governed by the same law. The power to collect the plaintiff's taxes the same as city taxes carried with it, as an incident to the power, the right to use all means which could be used to collect city taxes, but in no legal sense had the treasurer an incidental right to receive a percentage or other compensation for making such collections, because his lawful pay was by a salary, and a salary, fixed for services generally, can not properly be deemed to be incident to particular services, nor, without special authority for so doing, could a salary be made incident to the particular services required by any process of apportionment. A part of a salary is for general duties and responsibilities, which could not be apportioned except under an arbitrary and authoritative rule. There is no such rule.

We conclude, therefore, that for all taxes voluntarily paid, whether delinquent or current, the plaintiff was entitled to the entire sums collected, including the interest and penal-

ties, if any, and the defendants were in the wrong in detaining any part thereof.

It remains to be considered whether a different conclusion is required in reference to collections made by distress and sale of property. This inquiry is applicable to the third paragraph of the complaint only. By the 44th section of the law, as we have already seen, the city treasurer, in addition to the salary allowed under the 51st section, is "entitled to such fees for collections made by distress and sale, and charges for keeping and removing property distrained, as are paid to county treasurers for like services." By the 5th section of an act approved May 31st, 1861, Acts 1861, Spec. Sess., p. 92, which it seems was in force when the act of March 14th, 1867, was passed, it was provided that county "treasurers shall be allowed for their services in making such collections five per centum on the amount of all such collections of delinquent taxes, payable in just proportion out of each fund collected, and shall also be allowed constable's fees and mileage from the place of holding elections in each township to the residence of such delinquent taxpayer, which shall be collected from such taxpayer." But by section 14 of the act of March 12th, 1875, concerning fees and salaries, which had come into force before the collections involved in this suit were made, it was provided that the county treasurers "shall also receive and retain out of all delinquent taxes collected, five (5) per centum, when paid voluntarily, and without levy, and six per centum if paid after levy; and the treasurer shall be allowed the same fees and charges for making distress and sale of goods, and chattels for the payment of taxes, as may be allowed by law to constables for making levy and sale of property on execution." The 26th section of the same act prescribes the fees and charges of constables in such cases. 1 R. S. 1876, pp. 471, 476.

Construing these statutory provisions together, it is mani-

fest that the fees and charges allowed the city treasurer by the 44th section of the act of March 14th, 1867, are the fees and charges only which are allowed the constable on an execution sale, and do not include the percentages allowed to county treasurers at either rate named. It is equally manifest that these fees and charges are collectible out of the property of the taxpayer in each case, and can be deducted from the amount of the tax, interest and penalty, in case only the sum realized was insufficient to pay both. The presumption is that the officer did his duty, levying on property sufficient to pay all that was due, including his own fees and charges; and, if in fact that was not so, it can be shown by answer.

We therefore conclude that the third paragraph of the complaint, as well as the first, second and fourth, was good, and the demurrers to each should have been overruled.

Judgment reversed, with costs, and cause remanded, with instructions to proceed in accordance with this opinion.

Elliott, J., absent.