## STATE OF INDIANA, EX REL. SHEA, *v.* BILLHEIMER, AUDITOR OF STATE.

[No. 21,612. Filed December 15, 1911. Rehearing denied June 6, 1912.]

1. JUDGES. — *Compensation.* — *Statutes.* — *"Salary."* — The act of March 11, 1903 (Acts 1903 p. 524, §1656 Burns 1908), providing for an allowance of $300 per annum to the judge of each circuit, and to the judge of each superior court district, containing more than one county, "which allowance shall be added to the salary of such judge in lieu of traveling expenses," is not a provision for the payment of traveling expenses, but is an act increasing the salaries of judges having more than one county in their circuits. pp. 86, 89.

2. CONSTITUTIONAL LAW.— *Statutes.*— *Validity.*— *Presumptions.*— *"Salary Law."*—When the legislature enacts a salary law, which does not give all the officers of the same kind the same salary, it will be presumed, if necessary to the constitutionality of the act, that the legislature has graded the compensation of such officers in proportion to "the population and the necessary services required" in compliance with article 4, §22, of the State Constitution. p. 88.

3. CONSTITUTIONAL LAW. — *Statutes.*—*Presumptions.*—Every presumption is indulged in favor of the constitutionality of a law, and it is only when it is made to appear beyond a reasonable doubt that it violates some provision of the Constitution that the court can declare it void. p. 88.

4. CONSTITUTIONAL LAW.—*Salary Statute.*—*"Grading Compensation."*—*Legislative Question.*—Whether the compensation provided by a law is in proportion to population is a legislative question, and its determination by that body will not be set aside by the courts unless it is apparent that there has been a gross departure and manifest abandonment and defiance of the constitutional requirements. p. 89.

5. CONSTITUTIONAL LAW.—*Statutes.*—*Salary of Judges.*—*Act of 1903.*—Construed as a salary law, §1656 Burns 1908, Acts 1903 p. 524, providing for an allowance of $300 per annum to the judge of each circuit, and to the judge of each superior court district, containing more than one county, is not in violation of article 4, §22, of the State Constitution. p. 89.

6. STATUTES.—*Construction.*—*Practical Construction.*—In the construction of a statute or Constitution by the court, the practical construction thereof is influential. p. 89.

7. Judges.—*Compensation.*—*Statutes.*—*Statute Covering Subject-Matter of Former Act.*—*Repeal.*—The act of March 8, 1907 (Acts 1907 p. 182, §1651 Burns 1908), fixing the compensation to be paid out of the State treasury as salary to the judges of the circuit and superior courts, by reason of the fact that it covers the entire subject-matter of the act of March 11, 1903 (Acts 1903 p. 524, §1656 Burns 1908), and provides that "no other or different salary allowance shall be made or paid by the State," repealed said act of 1903. p. 90.

From Superior Court of Marion County (73,693) ; *Vinson Carter,* Judge.

Action by the State of Indiana, on the relation of Joseph H. Shea, against John C. Billheimer, Auditor of the State of Indiana. From a judgment for defendant, the relator appeals. *Affirmed.*

*Bernard Korbly* and *Willard New,* for appellant.

*James Bingham, W. H. Thompson, E. M. White* and *A. G. Cavins,* for appellee.

Per Curiam.—The controlling question in this case is whether the act of March 11, 1903 (Acts 1903 p. 524, §1656 Burns 1908), giving an additional compensation of $300 per annum to judges who have more than one county in their circuits was repealed by the act of March 8, 1907 (Acts 1907 p. 182, §1651 Burns 1908.)

Section 1 of the act of 1893 (Acts 1893 p. 341), as amended in 1895 (Acts 1895 p. 163, §1652 Burns 1908), fixed the salaries of the judges of the circuit and superior courts at $2,500 each, but permitted the boards of county commissioners in certain counties under certain conditions to allow an additional sum as an increase of salary, and under §2 of said act (§1653 Burns 1908) the same was to be paid out of the treasury of said county.

Section 3 of the act of 1899 (Acts 1899 p. 91, §1654 Burns 1908) authorized boards of county commissioners in all judicial circuits composed of three or more counties to allow a sum "in addition to or increase of the annual salary

of such judge, the same to be paid out of the treasury of such county, provided that the salary of any circuit judge shall not be increased over $500 under the provisions of this act."

Sections 1-5 of the act of 1899 (Acts of 1899 p. 374, §§1439c-1439g Burns 1901) provide for a sliding scale of compensation for circuit and superior court judges, depending on population and taxable property, to be paid out of the state treasury, not to exceed $3,000 per annum.

The act of 1903, *supra,* including the title, reads as follows: "An Act concerning the compensation of Judges of Circuit and Superior Courts in certain cases. Section 1. * * * That there shall be allowed to the judge of each circuit, and to the judge of each superior court district, containing more than one county, in addition to the salary now provided by law, the sum of three hundred dollars per annum, which allowance shall be added to the salary of such judge in lieu of traveling expenses."

The act of 1907, *supra,* including the title, reads as follows: "An Act fixing the compensation to be paid out of the state treasury as salary to the judges of the circuit and superior courts of the State of Indiana, and declaring an emergency. Section 1. * * * That there shall be paid to each of the circuit and superior judges of this state, as salary from the state, annually, the sum of three thousand five hundred dollars ($3,500), payable quarterly from the state treasury out of any money not otherwise appropriated: *Provided, however,* That this act shall not be construed to repeal any laws or parts of laws now in force, authorizing boards of county commissioners in certain counties to make additional allowances to the judges in such counties, but no other or different salary allowance shall be made or paid by the state."

It is contended by appellee that the $300 allowed by said act of 1903, payable out of the state treasury to judges whose circuits were composed of more than one county, "in lieu of traveling expenses," was an addition to their salaries and

constituted a part thereof; that as the act of 1907, *supra,* fixes the salaries of circuit judges at $3,500, and provides that "no other * * * salary allowance shall be made or paid by the state", it repeals said act of 1903 which gives $300 as a part of the salary of such judges, because said act of 1907 covers the entire subject-matter of said act of 1903. If this contention is correct, the judgment must be affirmed.

The relator contends "that the $300 allowed by said act of 1903 was not intended by the legislature as salary, but was intended to cover traveling expenses of each judge who had to travel from one county to another to attend court in his circuit, and that therefore said act was not repealed by said act of 1907."

It is evident from the language of said act of 1907 and the express exclusion from repeal of laws authorizing boards of commissioners in certain counties to make additional allowances to the judges in such counties as an addition to or increase of the annual salary of such judges, and the express provision that "no other or different salary allowance shall be made or paid by the state", that the legislature intended to repeal all former laws relating to the subject-matter of said act, except as therein expressly provided.

1. Does said act of 1907 repeal the act of 1903? The last-mentioned act provides that said $300 allowed thereby is "in addition to the salary now provided by law". The addition must therefore be of the same nature as that to which it is added, that is salary. Said addition is not made as traveling expenses, but "shall be added to the salary in lieu of traveling expenses". These terms clearly indicate that the legislature thereby intended to give an increase of salary to judges having more than one county in their circuits.

In *People, ex rel.,* v. *Wemple* (1889), 115 N. Y. 302, 22 N. E. 272, an act provided certain justices of the supreme court should receive $1,200 annually in lieu of expenses, it was held to be a "clear grant of pay, or compensation, hav-

ing no connection with expenses incurred by a justice. As granted by this act, it became, naturally and plainly, as much a part of the compensation to the justice as though his salary, *eo nomine,* had been increased to compensate him further for what his office entailed upon him in the way of duties and work. Expenses or no expenses, he became entitled to the whole of the $1,200.'' So under said act of 1903 each of the judges coming within the provisions thereof was entitled to the whole of the $300 traveling expenses or no traveling expenses.

The relator contends, however, that to hold that said allowance of $300 was intended as salary would render the act of 1903 local or special, in violation of article 4, §22, of the State Constitution, which reads as follows: ''The General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * In relation to fees or salaries; *except that the laws may be so made as to grade the compensation of officers in proportion to the population and the necessary services required.''* (Our italics.) That, therefore, if this act is susceptible of two constructions, one of which will render it obnoxious to the Constitution and one will not, the court must adopt that construction which will uphold the law.

Said act of 1903 if given the construction contended for by the relator would be unconstitutional, because so construed it would be in violation of article 4, §22, *supra.* Said act is by its terms an act for the compensation of the judges coming within its provisions, and its title limits said act to compensation of said judges.

Said act does not give all the judges of the same kind in the State said compensation. Therefore to be valid it must grade said ''compensation * * * in proportion to population and necessary services required.'' Said act, if construed as contended for by relator, would grade the compensation, not in proportion to population and necessary services required, but only on the basis of traveling ex-

penses, and this, said section of the Constitution does not authorize.

If relator's contention is correct, that said act is unconstitutional, if a salary act, then all the acts authorizing boards of county commissioners to increase the salaries of judges, paying such increase out of the county treasury, are unconstitutional for the same reason.

The part of article 4, §22, of the State Constitution in italics was added thereto by an amendment made in 1881. Before said amendment this court held in *State, ex rel.*, v. *Reitz* (1878), 62 Ind. 159, and in *Hanlon* v. *Board, etc.* (1876), 53 Ind. 123, that a law providing for the compensation of public officers according to population was a general and not a local or special law, and was valid. *Legler* v. *Paine* (1897), 147 Ind. 181, 192, 193, 45 N. E. 604.

When the legislature enacts a salary law, which does not give all the officers of the same kind the same salary, the presumption is, if necessary to the constitutionality 2. of such act, that the legislature has "graded the compensation" of such officers in proportion to "the population and the necessary services required." Every presumption is indulged in favor of the constitution- 3. ality of a law, and it is only when it is made to appear beyond a reasonable doubt that it violates some provision of the Constitution that the court can declare it void. *Jamieson* v. *Indiana, etc., Oil Co.* (1891), 128 Ind. 555, 28 N. E. 76, 12 L. R. A. 652; *Citizens St. R. Co.* v. *Haugh* (1895), 142 Ind. 254, 258, 41 N. E. 533; *State* v. *Gerhardt* (1896), 145 Ind. 439, 44 N. E. 469, 33 L. R. A. 313.

It cannot be said that the salary, if it be a salary, provided by the act of 1903, *supra,* is not graded in proportion to the population and the necessary business required, merely because it only applies to judges of circuits and districts containing more than one county.

Whether the compensation provided by law is in proportion to population and necessary services is a legislative

question and such determination by that body cannot

4. be set aside by the court, unless it is apparent that there is a gross departure and manifest abandonment and defiance of the constitutional requirements. *Board, etc.,* v. *Lendeman* (1905), 165 Ind. 186, 190, 73 N. E. 912, and cases cited.

It is not apparent that there is any such departure, abandonment and defiance of said constitutional requirements in said act of 1903 if construed to be a salary law. It is

5. clear under the authorities cited, that the act of 1903, if construed to be a salary law, increasing salaries of the judges mentioned therein, is not in violation of article 4, §22, of the Constitution.

The legislature has never made any appropriation to pay said $300 annually, as traveling expenses of the judges having more than one county in their circuits or districts,

1. but said judges have been paid said sum in quarterly instalments each year out of sums appropriated by the legislature for the payment of salaries of circuit and superior court judges, until the taking effect on March 8, 1907, of the act of 1907 (Acts 1907 p. 182, §1651 Burns 1908), which fixed the salaries of circuit and superior court judges at $3,500. The same was paid by the State as a salary, and not as an expense allowance, on "salary vouchers" filed for that purpose. It is evident that from the time said act of 1903 took effect until March 8, 1907, the date, it is claimed, the same was repealed by said act of 1907, the practical construction thereof by the legislature and the state officers charged with the disbursement of the state funds, has been that said $300 was a salary and not a traveling expense allowance.

It is held that practical construction of a statute or Constitution is influential. *City of Indianapolis* v. *Navin*
(1898), 151 Ind. 139, 147, 47 N. E. 525, 51 N. E. 80,

6. 41 L. R. A. 337; *Smith* v. *Indianapolis St. R. Co.*
(1902), 158 Ind. 425, 435, 63 N. E. 849; *Spaulding*

v. *Mott* (1906), 167 Ind. 58, 63, 64, 66, 76 N. E. 620; *Board, etc.*, v. *Bunting* (1887), 111 Ind. 143, 145, 12 N. E. 151.

The title of said act of 1903 refers to the "compensation" of judges, and the act of 1907 in its title purports to fix the "compensation" of the same officers. Evidently compensation of judges is the subject of each of said acts, and as the act of 1907 covers the entire subject-matter of the act of 1903 there is a repeal, by implication, of said act of 1903. *Frank* v. *City of Decatur* (1910), 174 Ind. 388, 92 N. E. 173, 174, and cases cited; *Morris* v. *City of Indianapolis* (1912), 177 Ind. 369, 94 N. E. 705, 713; *Findling* v. *Foster* (1908), 170 Ind. 325, 84 N. E. 529, and cases cited; *State* v. *Squibb* (1908), 170 Ind. 488, 490, 491, 84 N. E. 969, and cases cited; *Thomas* v. *Town of Butler* (1894), 139 Ind. 245, 38 N. E. 803; *Warford* v. *Sullivan* (1897), 147 Ind. 14, 46 N. E. 27, and cases cited; *State* v. *Cristman* (1879), 67 Ind. 328, 333, and cases cited; *Leard* v. *Leard* (1868), 30 Ind. 171.

Moreover, in view of the practical construction by the legislature and the state officers, charged with the disbursement of the state funds, of said act of 1903 until and at the time said act of 1907 was passed, that said act of 1903 was a salary and not an expense allowance payable by the State, the last clause of §1 of said act of 1907, which provides, "but no other or different salary allowance shall be made or paid by the state", is significant, for it expressly prohibits the payment of all salary allowances by the State, except the salary allowance provided by said act of 1907. It therefore forbids the payment of the salary allowance made by said act of 1903.

It follows that the judgment must be affirmed.

Judgment affirmed.

DISSENTING OPINION ON CROSS ERROR, CONCURRING
IN RESULT.

MORRIS, C. J.—The proper decision of the question of the repeal of the act of 1903 (Acts 1903 p. 524, §1656 Burns 1908), depends on whether the $300 allowance made by the act, was, by the legislature, intended as an increase in the salaries of the judges therein designated, or as a reimbursement to them for their expenses in traveling to the courts, in their districts, where they did not reside.

Our Constitution requires the subject-matter of a statute to be expressed in its title, and therefore the title may be considered to ascertain the legislative intent. *State, ex rel.,* v. *Board, etc.* (1906), 166 Ind. 162, 76 N. E. 986.

In construing a statute, the court will seek to discover and carry out the intention of the legislature, and to that end will consider the title of the act, each and every part of the body of the act, the circumstances under which it was enacted, the old law, if any, on the subject, other statutes on the same or relative subjects, whether in force or repealed, contemporaneous legislative history, and the evils and mischiefs sought to be remedied. *State Board, etc.,* v. *Holliday* (1898), 150 Ind. 216, 49 N. E. 14, 42 L. R. A. 826. The intent or spirit, rather than the letter of the act, should govern. *Board, etc.,* v. *Given* (1907), 169 Ind. 468, 80 N. E. 965, 82 N. E. 918, and cases cited. Words are to be given their ordinary meaning, unless, thereby, the legislative intent would be defeated. If there is no ambiguity in a statute, and the legislative intention is not doubtful, of course there is no necessity for construction; but, if possible, an ambiguous statute will be so construed as to prevent absurdity, hardship or injustice. *Indianapolis Union R. Co.* v. *Waddington* (1907), 169 Ind. 448, 82 N. E. 1030; Sutherland, Stat. Constr. §324. Repeals of statutes by implication are never favored, and where one theory of construction would render a statute unconstitutional, and the other would render it constitutional, the latter must be adopted. *Smith*

*v. Indianapolis St. R. Co.* (1902), 158 Ind. 425, 63 N. E. 849.

If this allowance was a salary increase, undoubtedly it was intended to be repealed by the clause in the act of 1907 (Acts 1907 p. 182, §1651 Burns 1908), which provides that "no other or different salary allowance shall be made or paid by the state."

If, on the other hand, this $300 allowance act of 1903 was intended to reimburse the judges for their traveling expenses, it is equally clear that it was not repealed by the act of 1907, for the latter act, in express terms, deals only with salaries, and even if repeals by implication were favored, instead of being in disfavor, there would be no ground on which to predicate an implication.

There can be no question about the definition of the word "salary". The dictionaries are in accord that "salary" means payment or recompense for services. If there were any substantial disagreement in dictionary definitions, the one above given was long ago declared by this court to be correct, and as this judicial declaration of the meaning of the word, under our Constitution, had been made long before the enactment in controversy, such declaration was binding on the legislature, unless a contrary intent is clearly shown. *Board, etc., v. Wasson* (1881), 74 Ind. 133; *Cowdin v. Huff* (1857), 10 Ind. 83; 34 Cyc. 1826.

The words "salary" and "compensation" are not of equivalent meaning. All salaries are compensations, but all compensations are not salaries. Compensation may be made for services, and then it is a salary. It may be made for labor, and then it is termed wages. It may be made for injuries to person or property, and then it is called damages. It may be made to one for expenses incurred incident to an undertaking, and then it might be appropriately called a reimbursement. Standard Dictionary.

The title of the act of 1903 has in it no reference to salaries. The full title of the act is as follows: "An act Con-

cerning the *compensation* of Judges of Circuit and Superior Courts in certain cases." (Italics throughout opinion mine.)

The title of the act of 1907 is as follows: "An Act fixing the *compensation* to be paid out of the state treasury *as salary* to the judges," etc. It is thus revealed that the legislature of 1907, in the title to that act, clearly recognized that certain judges were then being compensated from the state treasury *otherwise* than for salaries for services rendered, or it would have been unnecessary to limit the compensation to the *"salary"* paid.

It is true that in the body of the act of 1903 it provides that the $300 compensation shall be made "in addition to the salary now provided by law," and it shall be "added to the salary of such judge". The real intent of the legislature is evinced in the phrase, "in lieu of traveling expenses". Can there be any doubt about the legislative intent? Surely it was the sole purpose of the act to reimburse such judges for their expenses incurred for traveling to the county or counties, other than the one of residence, to hold court, which expenses would rationally include railway fare and hotel bills.

And, is it not equally clear that the clause "in addition to the salary," etc., was inserted solely to evince the intention that the present salary allowed should not be cut down by reason of this allowance? Would not the meaning have been as clearly expressed had the act declared that this allowance was made outside of, or beyond, the present salaries?

The Attorney-General, Mr. Bingham, in his very carefully-prepared brief in this cause, filed in 1910, asserts, as one of the propositions relied on, that the actual traveling expenses of these judges are in themselves "services," and may well fall within the meaning of the word "salary," and be considered as such, and cites *Somers* v. *Keliher* (1874), 115 Mass. 165; *Tracy* v. *Waters* (1895), 162 Mass. 562, 39 N. E.

190, and *Yost* v. *Scott County* (1879), 25 Minn. 366, in support thereof. It seems to me that the above proposition must be established, or the theory of the repeal must fail, for it is absolutely certain that the act of 1907 repealed no former compensation act, unless the compensation was allowed as salary. The authorities cited fall far short of supporting the proposition of the Attorney-General.

Giving the word "salary" the definition declared by this court in *Board, etc.,* v. *Wasson, supra,* this proposition inevitably leads to an absurdity.

Words in a statute must ordinarily be given their common meaning.

To hold that in buying a railroad ticket or paying for a meal at a hotel or restaurant a judge is rendering judicial services is obviously at variance with the principles of sound reasoning.

While it would be the duty of this court in construing an enactment, which unquestionably intended in using the word "black" to mean thereby "white," to give the word the meaning intended, it nevertheless remains that a legislative body cannot change the attributes or characteristics of colors. And no enactment of legislative body or decree of judicial tribunal, can ever alter the fact that in purchasing transportation or sustenance, a judge is not performing a judicial act.

In construing an ambiguous act it is proper for the court to consider the reasonableness or unreasonableness of a theory of construction asserted. This is so, because legislatures, like individuals, are impelled by some reason in the doing of every act. And in seeking such reason a consideration of the conditions and surroundings is of vital importance.

The legislature, previous to 1903, had provided generally for reimbursing the state and county officers for traveling expenses incurred, when required to leave the county where their offices are situated. It had even provided for the allowance of mileage to legislators. It likewise provided for the reimbursement of sheriffs for their expenses in taking pris-

oners to state penal institutions, and taking the insane to the state hospitals, and a like reimbursement to the members of the state tax commission, and other officers. This reimbursement was generally, as in the act of 1903, made in a lump sum, in such amount as the legislature deemed would, on the average, recompense the officer, sheriffs and legislators; for example, being allowed so much per mile necessarily traveled. But previous to 1903, judges had been overlooked. The law requires the judge in a district composed of two or more counties to hold terms of court, at definite times each year, of stated duration, in each county of the district. In some districts more time must be spent holding court away from, than at, the judge's home. It was never contemplated by the law that free transportation should be given judges by common carriers of passengers. Consequently the judges had to pay their railroad fares and hotel bills from their own purses, with the result of a depletion, in that amount, of their incomes received from salaries, and from other sources, if any. This resulted in the judge of two or more counties receiving a less net income than the judge of a single county, although the services of the latter were in some cases much less than those of the former, and the population of the single county circuit was much less than that of the two or more county circuit. Undoubtedly it was to correct this glaring unfairness that the act of 1903 was passed. It is unjust to say that this act of 1907 imputes to the legislature the intent deliberately to undo its work of 1903, which righted this wrong.

The laborer is worthy of his hire, and judges are entitled to fair compensation. No officers of the State, not even the Governor, nor the judges of the courts of appellate jurisdiction, render any more important services to the people of the State than do the judges of the circuit and superior courts. Their duties require learning, patience and industry, and no one, however high his office, can perform a more worthy service than that of administering impartial justice

between man and man, and I cannot believe it was the intention of the lawmaking body, by its act of 1907, to repeal, by questionable implication, the fair enactment of 1903, tardily passed, to be sure, but at length recognizing that judges in the two or more county districts were as much entitled to reimbursement for traveling expenses as were legislators, sheriffs, tax commissioners and other officers.

Another rule for the construction of ambiguous statutes is that where one proposed theory of construction would render the act unconstitutional and another would not, the latter will be adopted. If the theory of the Attorney-General is to be adopted, I see no escape from the conclusion that such theory would have rendered the act of 1903 unconstitutional in its inception, and this view was adopted by the learned judge of the superior court who heard the case below, and who, while holding good the return of the state auditor to the alternative writ of mandate, which alleged, in substance, that the legislature had made no appropriation out of which to pay the relator, nevertheless held that the act of 1907 did not have the effect of repealing the act of 1903.

Our Constitution, while not denying to the legislature the power to reimburse judges, as well as other state officers, for traveling expenses, does prohibit local or special legislation in regard to salaries, except that, by the amendment of 1881, it may pass such special acts, if the salaries are *graded according to population and services*. Constitution, Art. 4, §22.

The act is admittedly local, because it only applies to a limited number of judges. Does the act reveal an honest, or even any, attempt to grade salaries according to services or population?

In 1879 the legislature created a department of statistics for Indiana, for the collection and dissemination of information by printed reports made to the Governor and legislature. §9339 *et seq.* Burns 1908, Acts 1879 (s. s.) p. 193.

One of the purposes in creating this department was to furnish the General Assembly with accurate information, so that it might be enabled the better to perform its constitutional duties. When the General Assembly of 1903 met, it had before it the report of the department of statistics for the years 1901 and 1902. This report showed, for example, that in Delaware county, which alone constituted a circuit, and which then had no superior court, for the year ending June 30, 1901, there were filed 702 civil cases. Delaware county at that time had a population of approximately 50,000. In the same time, in the seventh circuit, composed of the counties of Dearborn and Ohio, with a total population of 26,918, 180 civil cases were filed.

While the amount of business transacted by a court varies from year to year, and while the population of counties may materially increase or decrease in a short time, the fact remains that for years before the enactment of the act of 1903, Delaware county contained nearly twice the population of that of the two counties in the seventh circuit, and the business was more than twice as great in Delaware county as it was in the seventh circuit. Disparity almost as great existed with reference to other circuits.

Courts will not declare local legislation on the subject of fees and salaries unconstitutional where there has been a good-faith effort made to grade the salaries according to the constitutional mandate, but where there is a gross departure from, and manifest abandonment and defiance of constitutional rules, it becomes the duty of the judicial department to declare the enactment void. *Harmon* v. *Board, etc.* (1899), 153 Ind. 68, 54 N. E. 105; *Parker* v. *State, ex rel.* (1893), 133 Ind. 178, 32 N. E. 836, 33 N. E. 119, 18 L. R. A. 567; *Legler* v. *Paine* (1897), 147 Ind. 181, 45 N. E. 604.

If this act of 1903 is to be construed as a salary act, I see no escape from the conclusion of its invalidity. It gives the judge of the seventh circuit an increase of $300, and

withholds the same from the judge of the Delaware circuit, with almost double population and vastly more services required. If, assuming this increase to be a salary, the act would not be a gross departure from, and manifest abandonment and defiance of the Constitution, it would be difficult to conceive of legislation of this character that would fall within the constitutional prohibition, for, on such theory, there would be no escape from the conclusion that here the General Assembly, if not wholly ignoring the constitutional prohibition, arrogantly defies it. And if such· defiance shall be excused by courts, constitutional limitations must degenerate into mere advisory platitudes. I think the lower court was correct in its holding, that the act of 1903 was not a salary act, because so construed it would be violative of our Constitution, and in its holding that the act is in full force and effect.

There is another constitutional test for this statute. The Constitution prohibits the legislature from diminishing the salaries of judges during their terms. Would it be contended that where a judge was elected in 1904, in a circuit composed of two counties, and the legislature of 1905 might have made the county of the judge's residence a separate circuit, that thereafter the judge so elected would, during his term, be entitled to the $300 allowance? If this allowance was a salary for services he would have been entitled to it; otherwise not.

Moreover, on the theory that the act of 1903 provided for salary compensation, the act of 1907 was itself unconstitutional, because it provided for unequal compensation for judges, not graded according to population and services. It makes the amount received by the judges from the treasury the same, and, on the Attorney-General's theory, took away the $300 salary compensation for judges in the two or more county circuits. These traveling expenses must be paid by the judge, as heretofore, and if they are to be deemed a part of the salary, the result is that the judges in the two or more

county circuits actually receive less salary than the judges in the single county circuits, in the sum equal to their traveling expenses, which, by the act of 1903, was fixed in the lump sum of $300. Of course these expenses were actually in some cases more than $300, and in others less, but the legislature evidently considered that the sum mentioned was a fair approximation. But the fact remains that after a judge has paid these expenses, whether more or less than $300, out of his $3,500 salary, he has less salary in his purse than his neighboring judge of a one county circuit, who does not have any traveling expenses. These special inequalities do not arise as the result of any attempt, in the act of 1907, to grade salaries according to services or population, for if it was therein sought to grade salaries it was in defiance of the constitutional mandate.

In 1907, and long prior thereto, the counties of Greene and Sullivan, with a total population of over 54,000, had constituted the fourteenth judicial circuit, and the county of Hendricks, with a population of 26,005, constituted the fifty-fifth circuit. The last report of the department of statistics, made to the General Assembly before its session in 1907, showed that for the year 1905 over 900 civil cases were filed in the fourteenth circuit and less than 150 in the fifty-fifth, and previous reports showed about the same relative volume of business. There was as great disparity in other circuits. It would be idle to say that, if the 1903 allowance was salary, the act of 1907, in taking from the judge of the fourteenth circuit his $300 salary, and making his total salary the same as that of the judge of the fifty-fifth circuit, did not thereby, in effect, reduce the salary of the former below that of the latter, in a sum equal to his traveling expenses, and that this grading was not made on the basis of population and services.

On the other hand, if the act of 1903 provided a reimbursement for traveling expenses, as indicated by the title and body of the act, and by the surrounding circumstances and conditions, all constitutional objections to that act and

the one of 1907 disappear, and the legislature is relieved of the imputation of the deliberate unfairness of taking from worthy public servants the compensation for traveling expenses which it retained for its own members and for other officers.

In *Seiler* v. *State; ex rel.* (1903), 160 Ind. 605, 65 N. E. 922, 66 N. E. 946, 67 N. E. 448, this court decided that a county auditor is entitled to the $3 per diem compensation when acting as a member of the county board of review, in addition to his salary allowed by law.

Section 114, of the tax law of 1891 (Acts 1891 p. 199), as amended March 1, 1895 (Acts 1895 p. 74, § 8532 Burns 1901), privided that "such board shall be composed of the county assessor, county auditor and county treasurer, and two freeholders to be appointed by the judge of the circuit court, who shall each be paid out of the county treasury, the sum of $3 for each and every day while they are acting as members of said board." Ten days after the above section was amended, the fee and salary law of 1895 was passed. (Acts 1895 p. 319.) Section 21 of the act (§7226 Burns 1908) provided that the officers therein named should receive "the *compensation specified in this act*" and should receive "*no other compensation whatever.*" Section 116 of the act (§7326 Burns 1908) provided that where the auditor was entitled under existing law to receive any "*compensation*" in his own favor for services, he should thereafter tax the amount on account of such service, in favor of the county, *and pay it into the county treasury.*

It will be noted that in §7226, *supra,* the word "compensation" is used, which has a broader signification than "salary", and would include fees and wages as well as salary, and consequently, for that reason alone, the legislative intent to repeal was much more strongly implied there than in the act of 1907 in question.

In deciding the case of *Seiler* v. *State, ex rel., supra,* the court said on page 614: "Repeals or modifications of stat-

utes by implication are not favorably recognized by the law. Therefore, if upon any reasonable ground the provisions of these two independent statutes can be reconciled with each other so as to allow both to stand * * * it is the duty of a court * * * so to adjudge and hold."

On page 610, the court said: "Had the legislature intended to deny a county auditor the *right to the former compensation, it could have easily,* by the employment of but very few words in either statute, *expressed its will in this respect.*"

The above case has never been, heretofore, overruled. It was approved in *State, ex rel.,* v. *Flynn* (1903), 161 Ind. 554, 582, 69 N. E. 159. Surely it cannot be contended that in holding that this act of 1907, *supra,* repeals the act of 1903, *supra,* the holding in *Seiler* v. *State, ex rel., supra,* is not thereby impliedly overruled.

Had the legislature of 1907 intended the repeal of the act of 1903, its intention so to do might have been expressed in a single line, and where it is not so expressed, I cannot believe that the intention to perpetrate this injustice to worthy public servants should be imputed to it, by the words used in the act, which, standing alone, in my opinion, evince no intention to withdraw from these judges the just reimbursement for their traveling expenses.

It is manifest that mandamus will not lie to compel a state auditor to draw a warrant against a fund where no appropriation therefor has been made, and for that reason alone, as held by the lower court, the relator was not entitled to relief, and consequently the judgment should be affirmed, but I cannot assent to the proposition, brought into the case by the cross-errors assigned by the Attorney-General, that the act of 1903, *supra,* was repealed.

NOTE.—Reported in 96 N. E. 801. See, also, under (1) 25 Cyc 526, 533; (2) 8 Cyc. 801; (3) 8 Cyc. 803; (4) 8 Cyc. 775; (6) 36 Cyc. 1139; (7) 36 Cyc. 1077. As to what is general legislation and what special, and the distinction between them, see 21 Am. St. 780; 93 Am. St. 106.