ELLWANGER *v.* STATE OF INDIANA.

[No. 25,314. Filed March 8, 1932.]

*Samuel L. Stricler, Allen G. Messick* and *John A. Kersey,* for appellant.

*Arthur Gilliom,* Attorney-General, and *Bernard A. Keltner,* Deputy Attorney-General, for the State.

MYERS, J.—In the Grant Circuit Court appellant was charged by affidavit and convicted by a jury of an alleged unlawful sale to Ferris Jay for $3.60 of six two-ounce bottles of tincture of ginger containing more than one-half of one per cent of alcohol by volume, well knowing that it was to be used as a beverage. Acts 1925 ch. 48, p. 144, §4, §2717 Burns 1926. There was no motion to quash the affidavit or motion in arrest of judgment.

Appellant's only properly assigned error challenges the action of the court in overruling his motion for a new trial. The causes for a new trial relied upon are: (1) Verdict contrary to law; (2) verdict not sustained by sufficient evidence.

Appellant insists that the verdict was contrary to law for the reason, first, that under our federal Constitution, Art. 1, §8 and Art. VI, the statute upon which the affidavit in this case rests is unconstitutional and void, because it prohibits the sale for beverage purposes of an article of commerce so declared by the National Prohibition Act. 41 U. S. Stat. at L. 307, title II, §4, cl. (e) ; 27 USCA, §13 (e) ; Cornelius, Search & Seizure (2d ed.) §530, subd. 4, cls. (b) and (e). Secondly, because the trial court had no jurisdiction of the alleged offense, for the reason that the article alleged to have been sold for beverage purposes is an article of commerce, and, under the National Prohibition Act and the regulations of commerce, it is exclusively under the control of federal officers.

The two foregoing contentions submitted by counsel for appellant were not brought to the attention of the

trial court. It must be kept in mind that this case is here on appeal, and that the settled practice in this jurisdiction limits the functions of this court to a review of the rulings of the trial court involving questions of law properly saved below and shown by the record. *Gears* v. *State* (1931), *ante* 3, 176 N. E. 553; *Simmons* v. *Simmons* (1917), 186 Ind. 575, 116 N. E. 49; *Polonius* v. *State* (1923), 192 Ind. 664, 138 N. E. 259; *Barrows* v. *State* (1903), 161 Ind. 585, 69 N. E. 253; *Atlas Securities Co.* v. *Grove* (1922), 79 Ind. App. 144, 137 N. E. 570.

Counsel for appellant insists that the questions he presents are covered by his motion for a new trial—verdict of the jury contrary to law. §2325 Burns 1926, cl. 9. In this manner, he seeks to attack the constitutionality of the statute his client is alleged to have violated. Counsel's proposition involves merely a question of practice. The record at bar discloses a judgment against appellant upon an issue formed by an affidavit and his plea of not guilty. Neither the affidavit nor the statute upon which it was predicated was questioned in the trial court. From anything so far shown, the entire proceedings were regular and the judgment rendered according to law.

In the first place, a statute is presumed to be constitutional and will be so considered until otherwise declared by a tribunal having power so to do by appropriate procedure for that purpose. *Powell* v. *State* (1923), 193 Ind. 258, 139 N. E. 670; *Felker* v. *Caldwell* (1919), 188 Ind. 364, 123 N. E. 794; *State, ex rel.,* v. *Billheimer* (1911), 178 Ind. 83, 96 N. E. 801. If it be conceded that an indictment or affidavit based upon an unconstitutional statute fails to state a public offense, still, one would not be relieved from such charge without assailing the statute by some recognized method. An indictment or affidavit purporting to

charge a criminal offense is a pleading which may be tested by our statutory motion to quash or by a motion in arrest of judgment (*De La Tour* v. *State* [1929], 201 Ind. 14, 165 N. E. 753; *Guetling* v. *State* [1927], 199 Ind. 630, 158 N. E. 593; *Scott* v. *State* [1911], 176 Ind. 382, 96 N. E. 125), but the rulings thereon cannot be presented as error on appeal by a motion for a new trial. *Moore* v. *State* (1927), 199 Ind. 578, 159 N. E. 154; *Hunt* v. *State* (1921), 191 Ind. 406, 133 N. E. 8; *Bradley* v. *Onstott* (1914), 180 Ind. 687, 103 N. E. 798.

Appellant rests his insistence upon the phrase "contrary to law." This phrase, as used in the statute, we interpret as meaning contrary to the principles of law as applied to the facts or issues which the jury was called upon to try. *Bosseker* v. *Cramer* (1862), 18 Ind. 44; *Candy, Admr.,* v. *Hanmore* (1881), 76 Ind. 125, 128; *Equitable, etc., Ins. Co.* v. *Stout* (1893), 135 Ind. 444, 457, 33 N. E. 623; *Buck* v. *Buck* (1913), 122 Minn. 463, 142 N. W. 729. At most, it cannot be extended to include matters not proper to be considered in support of the motion for a new trial, nor to embrace any of the other distinct and separate grounds of the motion which are specified in the act. The method adopted by appellant to present his alleged constitutional question cannot be approved. Upon the record here submitted, that question is not before us.

Appellant's second insistence cannot be sustained. In the instant case, the gist of the offense was the sale of intoxicating liquor reasonably likely or intended to be used as a beverage, which was denominated in the affidavit "tincture of ginger." True, by §4 of the federal act, certain enumerated articles manufactured and prepared for market according to certain formulas or under certain regulations are not subject to that act. Among the articles mentioned are medicinal preparations, flavoring extracts and syrups that are "unfit for use as a

beverage, or for intoxicating purposes." Tincture of ginger is a pharmaceutically prepared solution by using diluted alcohol as a solvent on ginger roots. It is a legally authorized article of commerce and regarded as unfit for use as a beverage. Notwithstanding its marketability, one may offend the federal act by making sales "under circumstances from which the seller might reasonably deduce the intention of the purchaser to use" such article as an intoxicating beverage. Federal Act, tit. II, §4. In this connection, it may be well to call attention to the words "liquor" and "intoxicating liquor," as defined by the Legislature of this state. Acts 1925 p. 144, §2. "The words 'liquor' and 'intoxicating liquor' wherever used in this act shall be construed to mean all malt, vinous, or spirituous liquors, containing as much as one-half of one per cent of alcohol by volume, and every other drink, mixture or preparation of like alcoholic content, whether patented or not, reasonably likely or intended to be used as a beverage." This section of the statute, when read in connection with §4, it will be noticed, follows closely the language to which we have referred in the federal act. The ultimate object of both of these acts is the enforcement of §1 of the Eighteenth Amendment. In *United States* v. *Lanza* (1922), 260 U. S. 377, 381, 43 Sup. Ct. 141, 67 L. Ed. 314, it was said: "Each State, as also Congress, may exercise an independent judgment in selecting and shaping measures to enforce prohibition. . . . They may vary in many particulars, including the penalties prescribed, but this is an inseparable incident of independent legislative action in distinct jurisdictions." And, at p. 382: "Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other."

The Eighteenth Amendment to our federal Constitution purposed to prohibit the use of intoxicating liquor

for beverage purposes within the United States and all territory subject to its jurisdiction. In order to obtain that result, by §2: "The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation." The principle underlying appellant's insistence is that which is applied when the federal and state governments may legislate upon the same subject, in which case the congressional exercise of power is supreme and the right of the state becomes inactive. Congress (ch. 85, tit. II, §4) has exercised its power of enforcing §1 of the amendment. Since Art. VI, *supra,* makes the Constitution of the United States and all laws passed by Congress in pursuance thereof the supreme law of the land, it may well be argued that the Constitution and laws of the several states are subordinate to congressional action. The right of the individual states to pass laws directed to the enforcement of §1, *supra,* rests upon the meaning intended by the word "concurrent" in §2. Ordinarily, words in a constitution or used in framing laws are given their ordinary meaning unless it affirmatively appears from the entire wording of the instrument that some other meaning was intended. Giving the word "concurrent" the definition of our lexicons and as generally understood, and assuming that Congress had covered the subject, our state enactment, although yielding to Art. VI, *supra,* would not necessarily, for those reasons, be void, but it would be inoperative.

While the argument of appellant's counsel is exceedingly persuasive, yet we feel bound by the rulings in the National Prohibition Cases headed by *State of Rhode Island* v. *Palmer* (1920), 253 U. S. 350, 40 Sup. Ct. 486, 64 L. Ed. 946; *Vigliotti* v. *Commonwealth of Pennsylvania* (1922), 258 U. S. 403, 42 Sup. Ct. 330, 66 L. Ed. 686; and *United States* v. *Lanza, supra.* In the National Prohibition Cases, the court,

without assigning reasons, stated conclusions of law applicable to the Eighteenth Amendment, two of which seem pertinent to the instant case: "8. The words 'concurrent power' in that section (2) do not mean joint power, or require that legislation thereunder by Congress, to be effective, shall be approved or sanctioned by the several States or any of them; nor do they mean that the power to enforce is divided between Congress and the several States along the lines which separate or distinguish foreign and interstate commerce from intrastate affairs."

"9. The power confided to Congress by that section, while not exclusive, is territorially coextensive with the prohibition of the first section, embraces manufacture and other intrastate transactions as well as importation, exportation and interstate traffic, and is in no wise dependent on or affected by action or inaction on the part of the several States or any of them." The observations of Chief Justice White in his concurring opinion, to some extent, suggest the theory upon which the foregoing conclusions were stated, that is to say, the word "concurrent," as used in §2, signifies the uniting of "national and state administrative agencies in giving effect to the Amendment and the legislation of Congress enacted to make it completely operative." The meaning thus attributed to §2 recognizes the principle of supremacy of Congress over the states and its obligation to make operative the amendment, but it does not serve to preclude the several states from enacting laws designed to enforce the prohibition liquor law within their respective territorial limits, so long as they are obedient to and concurrent with the laws of Congress and the amendment. *Palmer* v. *State* (1921), 191 Ind. 683, 133 N. E. 388; *Hess* v. *State* (1922), 192 Ind. 50, 133 N. E. 880, 135 N. E. 145; *Waliski* v. *State* (1923), 193 Ind. 232, 139 N. E. 363. The cases to which we have di-

rected attention impel the conclusion that Congress and the states have unlimited power over the subject of enforcement of the amendment and may act independently of each other.

Again referring to our own act alleged to have been violated, and upon which appellant was convicted, we cannot say that it contains anything in conflict with either the amendment or the federal act.

Now, to the question as to whether it violates the commerce clause of Art. I, §8 of the United States Constitution. It must be conceded that tincture of ginger is a commodity and a subject of lawful commerce. It must also be conceded that the power of Congress to regulate commerce is paramount to that of the states and any declaration on the part of the states prohibiting the use and sale of an article lawfully in commerce would be, in effect, taking such article out of commerce and, therefore, an exercise of power over a subject confined exclusively to Congress by the federal Constitution. The object of vesting Congress with this superior power was, as said in *Cooley* v. *Board of Port Wardens* (1851), 12 How. (U. S.) 298, 13 L. Ed. 996, "to insure uniformity of regulation against conflicting and discriminating state legislation." Despite the fact that Congress has the supreme power to regulate commerce, the states may nevertheless, within their territorial limits, exercise legislative control of all persons, things and transactions of strictly internal concern so long as it does not interfere with commerce between their people and those of other states. *Bowman* v. *Chicago, etc., R. Co.* (1888), 125 U. S. 465, 493, 8 Sup. Ct. 689, 31 L. Ed. 700.

We must not forget that, while "tincture of ginger" is without the federal act, yet a sale under certain cir-

cumstances is declared unlawful by that act. Likewise is a sale of the same article under our state act unlawful only when it is "reasonably likely or intended to be used as a beverage." It does not follow from the mere fact that the article alleged to have been sold is denominated "tincture of ginger" that it is necessarily, as a matter of law, intoxicating, or that it is reasonably likely or intended to be used as a beverage.

Our state statute is local in its effect and applies only to transactions of strictly internal concern. It contains no restrictions with respect to persons or things affecting commerce either within or without the state, nor does it place any burdens upon or interfere in any manner with the commercial power of the federal government. While, to some extent, it may be regarded as a local regulation pertaining to the sale of a commodity within the state, lawfully an article of traffic, yet such regulation is so remote in its casual effect on commerce that courts will not declare such regulation an improper exercise by the state of its police power. *Pittsburgh, etc., R. Co.* v. *State* (1909), 172 Ind. 147, 87 N. E. 1034. Sales of tincture of ginger are not forbidden in this state by the act of 1925, *supra*, except when it is made to appear as a fact that it contains at least one-half of one per cent of alcohol by volume, and the further fact that the alleged offender is shown to have intentionally perverted the traffic of it. *Hedges* v. *State* (1924), 194 Ind. 122, 42 N. E. 13.

Counsel for appellant next insists that the remark of the court, "the date is proved, the sale and the price," was erroneous and harmful error, in that the conviction of appellant rests upon perjured testimony which the jury would not likely have believed had the court not assumed as proved certain elements of the case essential to warrant a conviction. The date, sale

and price included in the court's remark depended entirely upon the testimony of a single witness which was positively and unequivocally denied by the defendant. Under these circumstances, the remark of the court must be disapproved, but appellant reserved no exceptions to the court's alleged assumptions, nor did he take any other steps to have the court correct the alleged error, nor did he obtain any ruling in that respect which might have been made a cause for a new trial, and in this court the basis for error. The alleged erroneous action of the court is not before us.

As to the sufficiency of the evidence to sustain the verdict, we can only say that there was evidence before the jury, if believed, tending to sustain each essential fact necessary to a conviction.

Judgment affirmed.

Martin, J., absent.