THOMAS J. HILLIGOSS ET AL. *v.* ARTHUR J. LADOW,
AS MAYOR OF THE CITY OF KOKOMO ET AL. GERALD
SWING ET AL. *v.* ARTHUR J. LADOW, AS MAYOR OF THE
CITY OF KOKOMO ET AL.

[No. 2-1276A448. Filed November 8, 1977. Rehearing denied November 17, 1977.
Transfer denied February 16, 1978.]

*Donald A. Schabel,* of Indianapolis, *Paul I. Hillis,* of Kokomo,
for appellants.

*William P. O'Mahoney,* of Kokomo, *William R. Nolan,* of
Kokomo, for appellees.

SULLIVAN, P.J.—The issues upon appeal involve health insurance benefits and clothing allowance payments and whether they constitute an inclusive factor upon which police or fire department pensions must be computed.

The case originally involved two separate class actions for mandate. Appellants Hilligoss and Berryman filed suit on behalf of themselves and all others similarly situated who are entitled to benefits from the Policemen's Pension Fund of the City of Kokomo pursuant to I.C. 19-1-24-1 *et seq.* (Burns Code Ed. 1974). The class was defined as comprising all retired members of the City of Kokomo Police Department and the widows and dependents of former policemen.

Appellants Swing and Tomlinson filed suit as representatives of those entitled to benefits under the Firemen's Pension Fund of the City of Kokomo pursuant to I.C. 19-1-37-1 *et seq.* (Burns Code Ed. 1974). Their class was similarly defined as comprising all retired members of the City of Kokomo Fire Department and the widows and dependents of former firefighters.

The complaint in each action sought an order from the trial court directing the Board of Trustees of the respective Pension Funds and the Common Council of the City of Kokomo to include, in the base for computation of pension benefits, certain items of compensation which theretofore had been excluded and to correct the alleged corresponding deficiencies in past pension payments.

Because of the similarity of issues, the two actions were consolidated for trial. Submission was to the trial court without jury and on September 16, 1976 a judgment was entered. Appellants received an adverse determination with respect to two items of compensation and this forms the basis for their appeal. The trial court concluded that the statutory formula for computing pension benefits does not include the health insurance benefits or clothing allowance payments provided by the City.

We affirm. As a matter of law, we hold that these two items are not part of the "salary" received by a first-class patrolman or

"monthly wage" received by a first-class fireman within the meaning of the applicable pension provisions.

## I.

## HEALTH INSURANCE

We deal first with the City of Kokomo's health insurance program. The City maintains a group plan of family health insurance and makes contributions thereto on behalf of those policemen and firemen who elect to participate in the program.[1] The authority for the program is not apparent from the record. The trial court's decision notes that, there being no statutory authorization, the program is "probably founded upon a contract or possibly a city ordinance".

The police pension fund, on the other hand, is created by statute. I.C. 19-1-24-1 (Burns Code Ed. 1974). The third section of the chapter, I.C. 19-1-24-3 (Burns Code Ed. 1974), deals with the pension benefits payable to policemen in all but first-class cities and reads, in relevant part, as follows:

". . . such fund shall be used and devoted to the following purposes:

* * *

(3)  To any member of the police department of such city who retires from active service after twenty [20] or more years of such active service by such member, an annual pension equal to fifty per cent [50%] of the *salary* of a first-grade patrolman in such police department, plus two per cent [2%] of such first-grade patrolman's salary for each year of service of such retired member over twenty [20] years, provided that such pension *shall not exceed in any year an amount greater than seventy-four per cent [74%] of the salary of a first-class patrolman.* Such pensions shall be computed on an annual basis but shall be paid in twelve [12] equal monthly installments. At any time that the salary of a first-grade patrolman is

---

1.  Under the prescribed arrangement, the City pays a percentage of the required premiums on behalf of the participating policemen and firemen who then pay the remainder. The program is not mandatory. Yet those who do not participate do not receive a comparable benefit. For reasons hereinafter discussed, the voluntary character of the program has no bearing on our decision.

increased or decreased, the pension payable hereunder shall be proportionately increased or decreased.

\* \* \*

(4) To the payment of funeral benefits to the heirs or estate of any active or retired member of the police force who has suffered death from any cause, an amount fixed by ordinance, but no less than six hundred dollars [$600].

Except as herein otherwise provided, to the payment to the widow of any police officer who may die under the circumstances set out above, an amount fixed by ordinance, but not less than a sum equal to thirty per cent [30%] of the *monthly pay* of a first-class patrolman per month to continue during her life while unmarried, and the payment to each child of any such deceased police officer under the age of eighteen [18] years, an amount fixed by ordinance but no less than a sum equal to ten per cent [10%] of the monthly pay of a first-class patrolmen per month to each of such children, such payments to a minor child or children under the age of eighteen [18] years to continue only so long as such child or children shall remain under the age of eighteen [18] years;

\* \* \*

At any time that the *salary* of a first-grade patrolman is increased or decreased the pension payable hereunder shall be proportionately increased or decreased." (Emphasis supplied)

The firemen's pension statute contains similar language, except that "salary" is used interchangeably with "monthly wage" rather than "monthly pay". I.C. 19-1-37-14 (Burns Code Ed. 1974).[2]

---

2.   The firemen's pension statute, in relevant part, provides:

"(a) The sum which shall be paid to permanently disabled members and to the widows, orphans, mothers and fathers of deceased members, shall be as follows: Upon retirement with such disability during service, a member shall receive in monthly installments an amount equal to fifty-five per cent [55%] of the *monthly wage* received by a fully paid first-class fireman in such city at the time of the payment of such pension; and in the event of his decease while in such service of the fire force or after such retirement, the widow shall receive an amount equal to thirty per cent [30%] of the monthly wage received by a fully paid first-class fireman in such city at the time of the payment of such pension; and their children under eighteen [18] years of age each shall receive an amount equal to ten per cent [10%] of the monthly wage received by a fully paid first-class fireman in such city at the time of the payment of such pension, and any mother or father of a deceased member of the fire force who is eligible for a pension, shall receive jointly an amount equal to thirty per cent [30%] of the monthly wage received by a fully paid first-class fireman in such city at the time of the payment of such pension.

We note, as a preliminary matter, that judicial interpretation of the statutory language is warranted because its meaning is unclear.[3] The benefit formulas do not contain express inclusions or exclusions, nor can we obtain guidance from the ordinary definition of the word "salary".

In a broad sense, salary refers to compensation for services rendered and thereby embraces any form of remuneration paid in exchange for services. Yet salary also has a more restricted meaning as a category of or special type of compensation, i.e., a fixed amount payable at regular intervals for services rendered. The word thus lends itself to different meanings, depending upon the context in which it is used. *E.g., State ex rel. Shea v. Billheimer* (1911), 178 Ind. 83, 96 N.E. 801; *Board of School Com'rs. of Indianapolis v. Wasson* (1881), 74 Ind. 133; *Cowdin v. Huff* (1857), 10 Ind. 83. *See also,* Annot., 14 A.L.R.2d 634; 38 Words & Phrases, "Salary", p. 44 et seq.; Webster's Third New International Dictionary (1971), p. 2003.

A broad interpretation which equates salary with compensation in general would compel a result in favor of appellants. These insurance contributions represent compensation to each participating employee in the form of a fringe benefit that supplements his regular salary. The health insurance program is not

* * *

(b) Any member of such paid fire force who has been in such service twenty [20] years, upon making written application to the chief of such fire force, may, at his own option, without medical examination or disability, be retired from all service on such fire force, and on such retirement, the board of trustees shall authorize the payment to such retired member of a sum equal to fifty per cent [50%] of the *monthly wage* received by a fully paid first-class fireman in such city, town, township or county at the time of the payment of such pension plus two per cent [2%] of such fully paid first-class fireman's *salary* for each year of service of such retired member over twenty [20] years: Provided, That such pension shall not exceed in any year an amount greater than seventy-four per cent [74%] of the *salary* of a fully paid first-class fireman. The pension of the dependents of such retired members shall be the same in case of death after the retirement as is provided for dependents of those who die in the service, or after retirement with disability." (Emphasis supplied)

3. A statute which is unambiguous on its face cannot be interpreted by a court. *Indiana State Hwy. Com. v. White* (1973), 259 Ind. 690, 291 N.E.2d 550; *Indiana State Board of Tax Com'rs. v. Holthouse Realty Corp.* (1976), 170 Ind. App. 232, 352 N.E.2d 535.

a mere gratuity. As added inducement to employment, it is an integral part of the compensation package. *See, Epmeier v. United States* (7th Cir. 1952) 199 F.2d 508, 510-11.

By comparison, the more restricted meaning of salary would compel the opposite result. Employer insurance programs and other fringe benefits are not salary in the sense of a fixed amount payable at stated intervals. They represent another form of compensation distinct from the employee's *regular salary. E.g., County of Erie v. Hoch* (1966) 26 A.D.2d 4, 270 N.Y.S.2d 225, modified, 19 N.Y.2d 854, 280 N.Y.S.2d 584.

Fortunately, we are not without some guidance in ascertaining which of these two alternative approaches the General Assembly intended to adopt. Subsequent to the perfection of this appeal, the Indiana General Assembly amended the pension statutes in several respects pertinent to the issues under consideration here.

Acts 1977, P.L. 9 (Special Session), § 1, specifically defines the "[s]alary of a first-class patrolman" to exclude "remuneration or allowances for fringe benefits, incentive pay, holiday pay, insurance, clothing, automobiles, firearms, education, overtime, or compensatory time off". Section 2 defines the "[s]alary of a first-class firefighter" in the same manner.[4] The Act (§15) further attempts to clarify the legislative intent with respect to prior law by stating:

> ". . . it has never been the intention of the general assembly that remuneration or allowances for fringe benefits, incentive pay, holiday pay, insurance, clothing, automobiles, firearms, education, overtime, or compensatory time off be used in the calculation of benefits under I.C. 18-1-12, I.C. 19-1-18, I.C. 19-1-24, I.C. 19-1-25-4, or I.C.19-1-37 . . ."

While such legislative declarations are not binding on the courts,[5] they nevertheless are entitled to respectful consideration

---

4. The Act, approved May 25, 1977, provides that these definitions took effect May 1, 1977, subject to certain specified exceptions. We need not be concerned with this retroactive provision.

5. The expression of a subsequent legislature's opinion as to the proper construction of a statute passed by a previous legislature has no judicial force. The reasons behind this rule as presented in *Bettenbrock v. Miller* (1916), 185 Ind. 600,

whenever the meaning of a statute is in doubt.[6] *McClarnon v. State* (1932), 215 Ind. 157, 19 N.E.2d 252; *Taylor v. State ex rel. Ogle* (1907), 168 Ind. 294, 80 N.E. 849; *State, Dept. of Revenue, Gross Income Tax Division v. Bethel Sanitarium, Inc.* (1975), 165 Ind. App. 421, 332 N.E.2d 808.

More importantly, the statutory language in force at the time dictates the conclusion that salary is used in a restricted sense and does not include the City's contributions to the group insurance plan.

The interchangeable use of the words "salary" and "monthly pay" ("monthly wage") signifies that the benefit formula has reference to a first-class patrolman's or fireman's *regular salary*, exclusive of fringe benefits and other forms of added compensation. The contrary suggestion that this variation in terminology has no significance ignores the elementary rule of statutory construction that where possible each word be given effect. *City of Muncie v. Campbell* (1973), 156 Ind. App. 59, 295 N.E.2d 379; *Engle v. City of Indianapolis* (1972), 151 Ind. App. 344, 279 N.E.2d 827. *See also*, 2A Sutherland Statutory Construction (4th ed.) § 46.07, p. 65.

Also, we cannot disregard the catastrophic effect which appellants' suggested construction would have upon the budgets of Indiana cities.[7] Inclusion of this fringe benefit in the formula for

---

112 N.E. 771, are worth restating. First and foremost, the responsibility for construing doubtful statutes is a judicial power which is vested exclusively in the courts of this State. Legislative interference with that judicial function is prohibited by the Indiana Constitution, Art. 3, §1. It is furthermore the intent of the legislature that passed the act which the court seeks to ascertain, not the intent of a subsequent legislature.

6. A subsequent legislative expression cannot control or influence the judicial determination when the plain language of the statute expresses a contrary meaning. *Bettenbrock v. Miller, supra,* [185 Ind. at 607] 112 N.E. at 774. Otherwise, particularly in a case such as this, there is the danger that the subsequent legislature may impair vested rights. *Klamm v. State ex rel. Carlson* (1955), 235 Ind. 289, 292-93, 126 N.E.2d 487, 489.

7. The Court may consider the consequences of a particular construction whenever a statute is susceptible of more than one interpretation. In such cases the statute should be given a practical construction and one which avoids prejudice to the public interest. *State ex rel. Bynum v. LaPorte Superior Court, No. 1* (1973), 259 Ind. 647, 650, 291 N.E.2d 355, 356.

computing pension payments would necessarily result in the inclusion of all other fringe benefits. If the statutes were intended to have such far reaching consequences, the General Assembly, acting as a reasonably minded body, would surely have provided an express mandate to that effect. We would expect to find, for example, either more embracing terminology ("compensation") or a specific reference to "salary, fringe benefits, and other compensation". Instead, the General Assembly elected to employ, and retain over the years, more restrictive language. We cannot presume that this choice of wording was a futile or inadvertent gesture. *See* 2A Sutherland Statutory Construction (4th ed.), §45.12, p. 37.

The longevity pay cases cited by appellants do not force a contrary interpretation. Those cases merely hold that longevity pay falls within the salary formula for computing pension benefits. *City of Vincennes v. McCarter* (1968), 142 Ind. App. 493, 236 N.E.2d 76; *Orban v. Allen* (1968), 143 Ind. App. 513, 241 N.E.2d 378; *Kilfoil v. Johnson* (1963), 135 Ind. App. 14, 191 N.E.2d 321.

They are not authority for the proposition that other forms of compensation necessarily constitute salary. Longevity pay is not merely additional compensation. Unlike fringe benefits and other forms of added compensation, longevity pay is an integral part of the individual employee's *regular salary*, whether or not the city appropriation ordinance designates it as such. I.C. 18-1-11-2 (Burns Code Ed. 1974) authorizing cities to fix salaries by ordinance provides:

> "The annual pay of all policemen, firemen and other appointees shall be fixed by ordinance of the common council; and *it shall be lawful in such ordinance to* grade the members of such services and to *regular their pay, not only by rank, but by their length of service.*" (Emphasis supplied)

There is language in the longevity cases which could support a more expansive reading of the term "salary". But the language is at best ambiguous.[8] And since these cases did not have occasion

---

8. *Kilfoil v. Johnson, supra,* 191 N.E.2d at 324, quotes, with approval, the trial court's decision which stated in part:

to consider other forms of compensation, the broad import suggested by appellants is not self-evident, nor a necessary extension of those holdings.

Appellants also rely upon, and cite the longevity cases for, the proposition that pension statutes should be liberally construed in favor of intended beneficiaries. This rule, however, was never meant to be applied indiscriminately. It must be considered in light of the purpose underlying the pension program.

We note in this regard that the objective is not to reward policemen and firefighters per se, although that is the result or byproduct of these pension plans. Assurance of income upon retirement serves to attract competent persons to public positions and induce their loyal and continued service. This underlying goal of stimulated government efficiency is ultimately directed towards the general welfare of the taxpaying public. See generally, *Klamm v. State ex rel. Carlson, supra,* (1955), 235 Ind. 289, 126 N.E.2d 487. The liberal construction rule, therefore, is not a license to read into the act obligations against pension trust funds and the taxpayers which the legislature did not intent. *Id.*

Having thus ascertained the legislative intent with respect to the pension provisions based on the language used therein, we attach no significance to arguably contrary interpretations which

---

" 'that any monthly compensation or monthly payments, however designated, paid by said City to a first class fireman are and do constitute a portion of said fireman's monthly wages although a portion of the monthly wages is designated by a name other than a regular salary . . .' "

*Orban v. Allen, supra,* 241 N.E.2d at 380, refers to the holding in *Kilfoil* as follows:

"We held that longevity pay should be included in the computation of the monthly payments on which the pensions are based."

*City of Vincennes v. McCarter, supra,* 236 N.E.2d at 78, states that "pensions should [be] computed on the basis of the highest paid first class patrolman based upon applicable evidence."

The language quoted from the three cases is readily susceptible to the following interpretation: Where the evidence discloses that the city does regulate pay by length of service, the longevity payments are a part of regular salary, no matter how they are designated on the books.

have been placed upon various federal statutes cited by appellants.

## II.

### CLOTHING ALLOWANCE

The foregoing discussion also lends to our conclusion that, as a matter of law, the definition of "salary" for computing pension benefits does not include the so-called clothing allowance paid by the City pursuant to statute.

I.C. 19-1-10-1 (Burns Code Ed. 1974) which authorizes the allowance reads as follows:

"All cities of the first, second, third and fourth classes have regularly organized and paid police and fire departments shall provide for use by the active members of such police and fire departments of all uniforms, clothing, arms and equipment necessary to the performance of their respective duties: Provided, That after one [1] year of regular service in said departments, any such member thereof may be required by such city to furnish and maintain all of his uniform, clothing, arms and equipment upon the payment to such member by such city an annual cash allowance of not less than two hundred dollars [$200]: Provided further, That a city of first, second, third and fourth class may credit such a uniform allowance to each individual officer as against his purchases during any calendar year and provide for the payment of any cash balance remaining at the end of the calendar year . . ."

Depending upon the context in which it is used, the term "allowance" may or may not be synonymous with salary.[9] *See, e.g., State ex rel. Shea v. Billheimer, supra,* (1911), 178 Ind. 83, 96 N.E. 801.

Our conclusion that this annual cash allowance for clothing is not salary within the meaning of the pension provisions follows from an examination of the respective statutes. As we have

9. In general, a salary is always earned, whereas the term "allowance" may refer either to a gratuity or a repayment. Webster's Third New International Dictionary (1971), p. 58, defines allowance as "a sum granted as reimbursement or a bounty, or as appropriate for any purpose . . .; a fixed and, usually, restricted quantity."

interpreted the term here, "salary" does not include all forms of compensation, only that remuneration which is paid on a regular and periodic basis in exchange for services.

Admittedly, the clothing allowance is a form of compensation in that it does relieve the recipient of the necessity of making clothing expenditures from his usual remuneration. But the annual cash payment is supplemental to, and not an integral part of, the employee's *regular salary*. The statutory scheme underscores this distinction in the very existence of a separate clothing allowance authorization. I.C. 19-1-5-1 (Burns Code Ed. 1974) establishes the minimum salary compensation per month for policemen and firemen. We then find I.C. 19-1-10-1, *supra*, in a separate chapter, setting forth provision for additional sums annually for clothing and equipment.

Moreover, an analysis of the intent and purpose behind I.C. 19-1-10-1, *supra*, indicates that the clothing allowance is not paid in exchange for services — even though recipients need not actually use the full amount for the materials designated or otherwise provide an accounting for their expenditures. Under the terms of the statute, the City can require its police and fire personnel to provide their own clothing only upon payment of the annual cash allowance. The allowance is thus intended to help the recipient offset whatever cleaning, repair, and replacement costs he or she is likely to incur in furnishing and maintaining uniform, clothing, arms and equipment. Although some recipients may not use the full allotment for these purposes,[10] the amount that is unused bears no relation to the recipient's services. It is simply a reward for conserving those items, with the amount varying in

---

10. Appellants also emphasize that the allowance is paid without regard to whether the recipient is required to wear a uniform. Because some recipients do not wear uniforms, argue appellants, the allowance must be regarded as added salary. We fail, however, to see the logic of this argument. The nonuniformed recipient incurs expenses in furnishing and maintaining the clothes he wears on the job and has as much need of the clothing allowance as does the uniformed recipient. The statute plainly contemplates this by referring not only to "uniform[s]" but to "*clothing*, arms, and equipment" as well.

direct relation to the recipient's conservation efforts.[11]

The fact that the City appropriation ordinances have at various times classified the annual cash allowance under the headings of "salaries and wages, regular" and "other compensation" is immaterial. The wording of a municipal ordinance is not determinative of the General Assembly's intent in enacting legislation. Our analysis of I.C. 19-1-10-1, *supra*, leads to the conclusion that the General Assembly did not intend for the clothing allowance to constitute salary within the meaning of the pension statutes.

We are aware that an official opinion of the Attorney General expresses a contrary interpretation. 1973 O.A.G. No. 35, p. 108. However, such opinions are not judicially binding and there is no indication here that the General Assembly meant to acquiesce in the construction given by the Attorney General. *Cf., State Board of Tax Com'rs. v. Methodist Home for the Aged of the Indiana Conference of the Methodist Church, Inc.* (1968), 143 Ind. App. 419, 241 N.E.2d 84. The recent legislative amendments to the pension provisions indicate just the opposite.

We are also cognizant that cases from other jurisdictions provide support for the statutory construction urged by appellants. The two cases, cited by appellants, are the only reported cases disclosed by our research which deal with clothing allowances and pension benefits.

In *Anderson v. City of Long Beach* (1959), 171 Cal.App.2d 699, 341 P.2d 43, the clothing allowance was authorized by a city ordinance which provided for payments to be made on the basis of on-duty days without regard to the actual cost of the clothing worn. The court concluded that, even though the ordinance was not designated as a pay ordinance, the payments it authorized were actually treated by the city as "salary" in the sense of remuneration for services rendered. Although *Banish v. City of*

---

11. This view of the intent and purpose behind the clothing allowance authorization is in no way affected by any of the suggested interpretations of I.C. 19-1-10-2 (Burns Code Ed. 1974) which defines the property rights in the clothing and equipment provided by the City.

*Hamtramck* (1968), 9 Mich. App. 381, 157 N.W.2d 445, reached the opposite result, the determining factor was the same. The court held that "pay", within the meaning of the city charter fixing pension benefits, did not include a uniform allowance which was merely reimbursement for actual out-of-pocket expense.

Suffice it to say, our preceding analysis of the legislative intent underlying I.C. 19-1-10-1, *supra*, simply rejects the proposition that an allowance not confined to reimbursement for actual expense is necessarily related to the recipient's services and a part of his regular salary.

One final objection by appellants requires attention. They argue that the interpretation which we have adopted permits the City to increase compensation to active members by way of additional clothing allowances and fringe benefits without increasing pension benefits. In the words of the Michigan Court of Appeals in *Banish, supra*, 157 N.W.2d at 448, this "would permit the city to keep the retirees' pay constant—or, indeed, to effect only reductions and no increases—by simply adopting the correct nomenclature and dividing the pay of active service employees into categories plausibly packaged and labeled".

We are not mindful that this is a possible consequence of today's decision. Yet the policy question suggested by the possibility of subterfuge is a matter best left to the General Assembly. Our role in interpreting a statute is a limited one and in the end we must defer to the well established boundaries of judicial decisionmaking. The Supreme Court enunciated this principle in *State ex rel. Bynum v. LaPorte Superior Court, No. 1* (1973) 259 Ind. 647, 650, 291 N.E.2d 355, 356, as follows:

> "Once having determined [the legislative] intent, however, the ambiguity disappears, and we are no more at liberty to adopt a construction that will not give effect to such intent than we would be had there been no ambiguity in the first instance. This, notwithstanding that we may not approve its purpose or that we perceive undesirable side effects apparently not envisioned at the time of passage."

Judgments affirmed.

Robertson, C.J., (participating by designation) and White, J. concur.

NOTE—Reported at 368 N.E.2d 1365.