NO.   94-073

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE THE MARRIAGE OF

ROBERTA LEE MURPHY,

     Petitioner and Respondent,

  and

DARRELL J. MURPHY,

    **Respondent and Appellant.**

FILED

NOV 22 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Ninth Judicial District,
In and for the County of Toole,
The Honorable R. D. **McPhillips,** Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Joan E. Cook, Miller & Cook Law Office,
Great Falls, Montana

    For Respondent:

        Merle Raph, Attorney at Law,
Shelby, Montana

Submitted on Briefs:  August 4, 1994

Decided:  November 22, 1994

Filed:

_____
Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Darrell Murphy appeals the findings of fact, conclusions of law, and order of the Ninth Judicial District Court, Toole County, modifying a prior custody and property settlement agreement and decree of dissolution. The District Court modified the original agreement and decree, designating Roberta Murphy as primary custodian of the parties' three minor children, and ordered Darrell to pay $618 per month for child support. We affirm.

The following issue is raised on appeal:

Did the District Court, in determining the amount of child support owed by Darrell, err by not allowing a $6000 deduction for subsistence expenses incurred in his employment and reimbursed by his employer?

Darrell and Roberta entered into a common law marriage on February 14, 1977. Three children were born of the marriage. Roberta petitioned for dissolution on September 7, 1989.

On July 20, 1990, Darrell and Roberta executed a custody and property settlement agreement providing for joint custody of the children, granting Darrell primary custody, and allowing Roberta liberal visitation. They also agreed that neither party would pay child support to the other. Concluding that the agreement was reasonable and appropriate, the District Court adopted its provisions and issued the decree of dissolution on July 30, 1990.

In June 1992, Darrell's girlfriend called Roberta and asked her to come and get the children. Roberta called Darrell, and he

told her that she now had custody of the children. At that time, Roberta lived in a one bedroom apartment and did not possess the children's clothing, personal belongings, or furniture. Therefore, she rented a multi-bedroom dwelling and purchased beds, dressers, and clothing for the children.

According to Roberta, after the transfer of custody, Darrell sporadically paid child support until July 1993 when he began to make regular payments to the Child Support Enforcement Division (CSED). On September 9, 1993, Roberta filed a motion requesting the District Court to determine the correct amount of child support owed by Darrell.

The District Court heard the parties' arguments regarding child support on October 21, 1993. Darrell testified that he had been paying $450 a month in child support through CSED and that the $450 figure had been determined through an administrative decision of CSED. Roberta claimed that Darrell owed $618 per month based on her Montana Child Support Determination Worksheet (worksheet) calculations. Darrell claimed that he owed $462 per month based on his worksheet calculations. The difference in the parties' calculations was attributable to their differing treatment of $6000 of "subsistence pay" which Darrell received annually from his employer.

Darrell testified that he worked 26 to 28 days per month. He stated that, while on the road, he incurred expenses for food, gloves, tools, and telephone calls. Darrell testified that his

3

employer reimbursed him $21 per day to cover these subsistence expenses, but that the $21 did not cover the total amount that he actually spent. He testified that, according to the Internal Revenue Service (IRS), he was allowed to deduct for tax purposes $30 per day for travel expenses within the United States and $34 per day for travel expenses within Canada.

In computing his gross income, Darrell stated that he included $500 per month for subsistence pay, and in determining net income, he calculated a **"road** subsistence" expense deduction using the $21 per day reimbursement, and not the full $30 or $34 allowed by the IRS. Roberta maintained in District Court, and maintains on **appeal,** that no deduction is allowed for Darrell's reimbursed travel expenses.

The District Court requested briefs and copies of the parties' worksheets. The District Court concluded that the $6000 which Darrell received in reimbursements was includable in gross income but not deductible from net income and ordered Darrell to pay $618 per month in child support pursuant to Roberta's worksheet calculations. Additionally, the District Court ordered that Darrell be allowed to take the tax exemptions for the children provided that his child support payments are made timely and are kept current.

Did the District Court, in determining the amount of child support owed by Darrell, err by not allowing a $6000 deduction for

4

subsistence expenses incurred in his employment and reimbursed by his employer?

Darrell argues that, in calculating his monthly child support obligation, the $6000 in subsistence pay should not only be included as gross income, but also should be deducted as a required employment expense. We disagree that the reimbursed expenses are deductible.

The District Court, in its findings of fact, conclusions of law, and order, made the following determinations:

> 7. The Administrative Rules of Montana (ARM) provide instruction for courts in their use of the Child Support Guidelines. ARM 46.30.1508 states that in determining the resources of each parent available for child support, gross income includes expense reimbursements such as reimbursed meals. ARM 46.30.151[6] states that net income means gross income less any deductions for unreimbursed expenses.

> 8. According to ARM, the $6,000.00 that Respondent is reimbursed for his road subsistence shall be included in gross income but not deducted from net income.

We review the findings of fact in child support modification cases to determine whether the district court clearly abused its discretion. In re Marriage of Durbin (1991), 251 Mont. 51, 55, 823 P.2d 243, 245. Similarly, we review the conclusions of law to determine whether the district court correctly interpreted the law. Durbin, 823 P.2d at 245.

In 1987, this Court specifically adopted the Uniform District Court Rule on Child Support Guidelines (guidelines) for use by the district courts of Montana. District Court Child Support Guidelines (1987), 227 Mont. 1. We have held that § 40-5-209, MCA,

5

and the guidelines properly vest discretion in the district courts to apply the guidelines, and that under the broad standards of § 40-4-204, MCA, the district court must scrutinize all deductions and exemptions claimed by either party. Chiovaro v. Tilton-Chiovaro (1991), 247 Mont. 185, 189, 805 P.2d 575, 577.

Section 40-4-208(2)(b)(i) and (ii), MCA, provides that modification of a decree relating to child support may only be made "upon a showing of changed circumstances so substantial and continuing to make the terms unconscionable" or "upon written consent of the parties." Section 40-4-208(2)(b)(iii), MCA, provides in part that "[t]he support obligation must be modified, as appropriate, in accordance with the guidelines promulgated under 40-5-209" which directs the Department of Social and Rehabilitation Services (SRS) to adopt uniform child support guidelines. Neither party contests the District Court's conclusion that the threshold requirements of § 40-4-208, MCA, have been met in this case. The instant dispute arises over the District Court's application of the guidelines and interpretation of the applicable Administrative Rules.

The Administrative Rules at issue in this case were promulgated by SRS "for the purpose of establishing a standard to be used by the district court . . . in determining child support obligations." Rule 46.30.1501(1), ARM. The Administrative Rules, therefore, work in conjunction with the guidelines to provide the district courts with guidance in determining child support.

6

Rule 46.30.1508, ARM, provides a framework for determining a parent's gross income. In addition to salaries, wages, and the other forms of income listed in 46.30.1508(1)(a), ARM, subsection (b) states that "gross income also includes expense reimbursements . . . if such reimbursements . . . reduce personal living expenses." According to the rule, examples of such expenses include "a company car, free housing or reimbursed meals . . . ." Rule 46.30.1508(1)(b), ARM. Darrell testified that he received reimbursements from his employer for food, gloves, tools, and telephone calls. Neither party disputes that Darrell's reimbursements constitute income pursuant to 46.30.1508(1)(b), ARM. The District Court, therefore, properly included the reimbursements in Darrell's gross income.

After gross income is calculated, the Administrative Rules provide an additional framework for determining net income:

> "Net income" means gross income . . . less any deductions for state or federal taxes, social security, and other similar deductions required by law or court order. <u>Unreimbursed exoenses</u> incurred as a condition of employment such as union dues, uniform and other occupational or business expenses should also be deducted.

Rule 46.30.1516(1), ARM (emphasis added). Darrell argues that the Administrative Rules do not specifically provide instruction in this situation. However, 46.30.1516(1), ARM, clearly addresses the situation at hand,, whereby unreimbursed expenses are deductible and reimbursed expenses are not. Because Darrell's expenses are

reimbursed, the District Court correctly concluded that they are not deductible from gross income pursuant to 46.30.1516(1), ARM.

Darrell argues that despite the express language of 46.30.1516(1), ARM, the "Internal Revenue Code, Section 162, supports the deductibility of the employment expenses claimed by Respondent in this case." Treasury Regulation § 1.162-2 (1960) provides in pertinent part that

> [t]raveling expenses include travel fares, meals and lodging, and expenses incident to travel such as . . . telephone and telegraph . . . . Only such traveling expenses as are reasonable and necessary in the conduct of the taxpayer's business and directly attributable to it may be deducted.

Darrell's attorney framed the question before the District Court as follows:

> MS. COOK: It's not a question of whether or not the subsistence pay can be used. It's a question of whether or not his over-the-road expenses can be deducted from his gross income. That's what the IRS Code speaks to, the fact that he is a transportation worker, transporting goods by truck, entitles him to deduct the over-the-road expenses from his gross income to determine the net expenses on the Child Support Guideline Worksheet line item form.

This Court, however, has repeatedly stated that

> [w]hen analyzing income under the Guidelines, it is the *disposable income of the parent, and not their income tax returns* alone, which need be considered by the court.

In re Marriage of Wersland (1991), 249 Mont. 169, 173, 814 P.2d 991, 993; Gray v. Gray (1990), 242 Mont. 69, 73, 788 P.2d 909, 912; In re Marriage of Mitchell (1987), 229 Mont. 242, 247, 746 P.2d 598, 601-02. Moreover, we have held that "[i]t is within the court's discretion to determine whether business expense deductions

8

are reasonable for purposes of calculating child support." Chiovaro, 805 P.2d at 579. We conclude that the District Court did not abuse its discretion by disallowing a deduction for Darrell's reimbursed travel expenses.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

9

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

The majority's conclusion imposes a child support obligation on this noncustodial parent based on income that he does not have. The result is unrealistic, unfair, and will inevitably impose an additional future hardship on this already divided family.

The administrative regulations on which the majority opinion is based have no relationship to reality. The result in this case imposes a burden of support on a father which is beyond his means and is, therefore, not in the best interests of either parent or the children.

Furthermore, and perhaps most important for purposes of this discussion, the majority opinion is simply contrary to the law.

Section 40-4-204(2)(e), MCA, provides that when arriving at the amount of child support due, the court must consider "the financial resources and needs of the noncustodial parent . . . ." Subsection (3)(a) of the same statute provides that guidelines adopted by the Department of Social and Rehabilitation Services should be followed "unless the court finds by clear and convincing evidence that the application of the standards and guidelines is unjust to the child or to any of the parties or is inappropriate in that particular case."

The majority opinion follows neither of the above provisions. It affirms the District Court's imposition of a child support obligation which does not reflect either the resources or needs of the noncustodial parent, and in doing so, it passively applies guidelines that the clear and convincing evidence establishes are unjust to the noncustodial parent.

10

The District Court and this Court can impose all the support obligation they want on the noncustodial parent. However, the money still has to come from somewhere. Where is this money going to come from when it is based on income that the noncustodial parent does not have? He is either going to have to go without food and housing, steal it, or just not pay it. None of these alternatives seem to reflect the kind of just and reasonable solutions this Court should strive for.

To include travel reimbursement in the calculation of gross income, and then exclude travel expense from the calculation of net income when, in fact, the child support obligation is arrived at based on net income, is to suggest that the noncustodial parent should create funds for child support from whole cloth. It may sound like a nice thing to do for the children, but in reality I fail to see how it is of any benefit to them.

I realize this is the "get tough on child support" age. However, imposing unrealistic and impossible burdens on noncustodial parents does not further anyone's interest. It simply further divides and stresses families which already have more than their share of problems to deal with.

For these reasons, I dissent from the majority opinion.

_____
Justice

Justice John C. Harrison joins in the foregoing dissent.

_____
Justice

11

November 22, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Joan E. Cook, Esq.
Miller & Cook Law Office
600 Central Plaza, Ste. 300
Great Falls, MT 59401

Merle Raph
Attorney at Law
P.O. Box 730
Shelby, MT 59474

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy