No. 97-501

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 92N

IN RE THE CUSTODY OF
ERICA LEIGH WILSON,

Minor child.

APPEAL FROM:   District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

David C. Humphrey; Humphrey Law Office, Polson, Montana

For Respondent:
Scott B. Spencer, Attorney at Law, Libby, Montana

Submitted on Briefs: March 5, 1998
Decided:   April 30, 1998
Filed:

_____
Clerk
Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2     Marion Michelle Wrightson (Shelly) appeals from the findings of fact, conclusions of law and order of the Nineteenth Judicial District Court, Lincoln County, awarding Eric Wilson (Eric) residential custody of Erica Wilson (Erica), Shelly and Eric's minor daughter.  We affirm.

                Factual and Procedural Background

¶3     Eric and Shelly never married, but lived together in Libby and Missoula, Montana, from 1991 until November of 1994.  During the time they lived together, Shelly's two daughters from a prior marriage lived with them, and the couple shared parental responsibilities.

¶4     In 1991, Eric, Shelly and Shelly's daughters lived in Libby, and Eric attended college and worked part time "here and there."  Erica was born in May of 1992, and the following year Eric, Shelly and the three children moved to Missoula so Eric could attend the University of Montana.  While in Missoula, Shelly stayed at home with the children and the couple's income consisted of Social Security benefits Shelly received for herself and her two oldest daughters, supplemented by income Shelly earned by babysitting other children.  In 1994, the couple separated and Eric moved back to Libby where he worked at a local lumber company.  Erica remained with Shelly and her two half-sisters in Missoula.

¶5     Eric and Shelly agreed between themselves to an acceptable visitation schedule under which Eric had visitation with his daughter approximately every other weekend; in April or May of 1995, visitation increased to alternating week-long visits.  Eric voluntarily began paying Shelly child support once he was employed, initially in the amount of $150 per month and later increasing to $200 per month.

¶6     Sometime in August of 1996, however, Shelly discontinued the alternating week-long visitation and limited Eric's visitation with his daughter to every other weekend.  Approximately one month later, after Shelly denied Eric's request to reinstate the alternating week-long visitations, Eric told Shelly that he would "have to take [her] to court," whereupon Shelly told Eric that he would not see Erica until the case was resolved.

¶7     During the following months, Shelly moved two times, first to Trout Creek, then to Thompson Falls, Montana.  Eric was not provided with his daughter's new telephone number, and the letters Eric sent Erica were returned.  When Eric finally obtained--and called-- Shelly's telephone number, Shelly did not allow him to talk to Erica and changed her number shortly thereafter.

¶8     Eric petitioned for child custody in October of 1996, requesting that he and Shelly have joint custody of Erica and that he be designated the residential custodian.  Following a temporary order which gave Eric and Shelly shared custody on an alternating week-long basis, the District Court held a hearing and, thereafter, entered its findings, conclusions and order awarding Eric residential custody of Erica and granting Shelly reasonable visitation.  Shelly appeals.

¶9    We address the following restated issues on appeal:

¶10        1.  Did the District Court err in applying § 40-4-212,
           MCA, rather than § 40-4-219, MCA?

¶11        2.  Did the District Court abuse its discretion by
           designating Eric as Erica's residential custodian?

¶12        3.  Did the District Court abuse its discretion by
           excluding evidence regarding Eric's former roommate's
           alleged possession of narcotics charge?

                          Discussion

¶13        1.  Did the District Court err in applying § 40-4-212,
           MCA, rather than § 40-4-219?

¶14   The District Court applied the best interest standard contained in § 40-4-212, MCA, in
determining custody, finding that "Erica's best interests would
be served by designating Eric as the residential custodian, with reasonable
rights of visitation to Shelly."  Shelly argues that the District Court was
required to apply § 40-4-219, MCA, rather than § 40-4-212, MCA, because a
de facto custody arrangement existed when Eric left Missoula and returned to
Libby, giving her custody of Erica.  Relying on In re Custody of Andre (1988),
234 Mont. 80, 761 P.2d 809, Shelly contends that, before their de facto
custody arrangement could be modified, Eric must establish the change in
circumstances required by § 40-4-219, MCA (1995).

¶15   A district court's decision to apply one statute instead of another is a
conclusion of law.  We review a district court's conclusions of law to
determine whether the court correctly interpreted the law.  In re Marriage of
Murphy (1994), 268 Mont. 1, 4, 885 P.2d 440, 442 (citing In re Marriage of
Durbin (1991), 251 Mont. 51, 55, 823 P.2d 243, 245).  Whether § 40-4-219,
MCA (1995), applies in this case depends on a proper interpretation of that
statute. When interpreting statutes, we give language its plain meaning.  In re
Marriage of Mikesell (1996), 276 Mont. 403, 407, 916 P.2d 740, 743 (citation
omitted).  That is, "the judge is simply to ascertain and declare what is in terms
or in substance contained therein, not to insert what has been omitted or to
omit what has been inserted."  Section 1-2-101, MCA.

¶16   Section 40-4-219, MCA (1995), provides in part:
      (1)  The court may in its discretion modify a prior custody
      decree if it finds, upon the basis of facts that have arisen since
      the prior decree, that a change has occurred . . .
           . . . .
           (2) A court may modify a de facto custody arrangement

in accordance with the factors set forth in 40-4-212.

. . . .

(7) As used in this section, "prior custody decree" means a custody determination contained in a judicial decree or order made in a custody proceeding.   [Emphasis added.]

By its terms, § 40-4-219, MCA (1995), applies only to a modification of a prior judicial custody decree or order.  Here, no such prior decree or order exists.  Rather, the parties had only a de facto custody arrangement which, pursuant to § 40-4-219(2), MCA, is to be modified in accordance with the factors set forth in § 40-4-212, MCA.  Thus, on the face of it, Shelly's reliance on § 40-4-219, MCA, is misplaced.

¶17  Nor is Shelly's reliance on our 1988 Custody of Andre decision well placed.  It is true that, in Custody of Andre, we held that the combined changed circumstances rule and best interest test set forth in § 40-4-219, MCA (1985), applied when a parent sought modification of a de facto custody arrangement. Custody of Andre, 761 P.2d at 812.  The 1989 Montana Legislature amended § 40-4-219, MCA, however, by adding subsections (2) and (7) discussed above.  1989 Mont. Laws, Ch. 303.  These amendments essentially nullified our holding in Custody of Andre.

¶18  We hold that the District Court did not err in applying § 40-4-212, MCA, rather than § 40-4-219, MCA.

¶19      2.  Did the District Court abuse its discretion by

designating Eric as Erica's residential custodian?

¶20  We review a district court's findings of fact relating to child custody to determine whether the findings are clearly erroneous.   In re Marriage of Dreesbach (1994), 265 Mont. 216, 220-21, 875 P.2d 1018, 1021; In re Marriage of Merriman (1991), 247 Mont. 491, 493,  807 P.2d 1351, 1353.  We will not overturn the district court's decision unless a clear abuse of discretion is shown.  Custody of D.M.G., 1998 MT 1, § 10, 951 P.2d 1377, § 10, 55 St.Rep. 1, § 10 (citing In re Marriage of Huotari (Mont.1997), 943 P.2d 1295, 1297, 54 St.Rep. 884, 885).

¶21  Shelly argues that the District Court erred by ignoring evidence of the de facto custody arrangement between the parties and ignoring evidence of--and failing to make a finding on--the strong bond that exists between Erica and her two half-sisters.  Finally, Shelly asserts that the District Court failed to apply the statutory presumption that custody should be granted to the parent who provided most of the child's primary care.  We address her arguments in turn.

¶22  With regard to Shelly's first argument, the thrust of her contention that the District Court ignored evidence of the parties' de facto custody arrangement is far from clear.  Certainly, the facts of those arrangements--as

well as Shelly's unilateral change in those arrangements--were before the District Court.  However, nothing in § 40-4-212, MCA, requires consideration of those facts with regard to Eric's petition for custody.  Indeed, our discussion of § 40-4-219, MCA (1995), above indicates that the court may modify such a de facto arrangement under the best interest standard set forth in § 40-4-212, MCA.  In other words, the de facto arrangement is not entitled to weight, in and of itself, in the District Court's determination of the best interest of the child.

¶23  With regard to Shelly's argument that the District Court ignored evidence regarding the bond between Erica and her two half-sisters, it is true that the interaction and interrelationship of the child with her siblings is a factor to be considered pursuant to § 40-4-212(1)(c), MCA.  Nothing of record indicates that the court did not consider that evidence, however.  Moreover, the District Court was not required to make specific findings on each factor set forth in § 40-4-212, MCA.  Marriage of Dreesbach, 875 P.2d at 1021 (citation omitted).  It need only express the "essential and determining" facts upon which its conclusions rest.  Marriage of Merriman, 807 P.2d at 1353 (citation omitted).

¶24  Here, the District Court set forth its essential and determining facts about Eric's ability to care for Erica and his diligence in exercising his visitation rights except when denied by Shelly.  It found that Eric is a loving and devoted father who completed a parenting class on his own volition and that Erica is happy when she is with him.  The District Court also considered, as we directed in In re Marriage of Wang (1995), 271 Mont. 291, 294, 896 P.2d 450, 452 (citation omitted), which parent is more likely to allow frequent and continuing visitation.  In this regard, the District Court made an express finding relating to Shelly's limitation of Eric's visitation and interference with telephonic communication and correspondence between Eric and Erica.  In addition, the court was

> concerned that Shelly's apparent animosity toward Eric will
> have an adverse impact upon Erica.  There is little question from
> the testimony that Eric is more likely to respect and promote
> Erica's relationship with her mother than Shelly would be to
> respect and promote Erica's relationship with her father.

We hold that the District Court sufficiently set forth the essential and determining facts on which its custody decision was based, that the findings are supported by substantial credible evidence and that Shelly has not established any abuse of discretion by the District Court in these regards.

¶25  Finally, Shelly claims the District Court erred in failing to apply the statutory presumption that "[c]ustody should be granted to the parent who has provided most of the primary care during the child's life" in her favor.  See § 40-4-212(3)(a), MCA (1995).  We disagree.

¶26  While the District Court did not expressly address the presumption, the evidence does not clearly establish that Shelly provided most of Erica's primary care.  Moreover, while Shelly may well have provided most of that care after she unilaterally limited Eric's visitation to every other weekend in

August of 1996, she cannot be allowed to benefit from the presumption following her unilateral action which resulted in substantially decreasing Eric's ability to provide primary care to Erica. Furthermore, even assuming that Shelly was entitled to the presumption, the presumption is rebuttable by its terms and applies only if it is not contrary to the child's best interest. See § 40-4-212(3), MCA (1995). In finding that Erica's best interest would be served by designating Eric as her residential custodian, the District Court necessarily determined that retaining Shelly as the primary custodian would not be in Erica's best interest. Consequently, we hold--as we did under similar circumstances in In re Marriage of Abrahamson (1996), 278 Mont. 336, 342-43, 924 P.2d 1334, 1338--that the District Court did, in essence, apply § 40-4-212(3)(a), MCA (1995), despite its failure to specifically mention the statute.

¶27 We hold that the District Court did not abuse its discretion by designating Eric as Erica's residential custodian.

¶28        3. Did the District Court abuse its discretion by
           excluding evidence regarding Eric's former roommate's
           alleged possession of narcotics charge?


¶29 During trial, Eric's counsel called Eric's former roommate, Jeff Larson (Larson), to testify regarding Eric's time with his daughter and their interaction during visitation. During cross-examination, the following exchange took place:

    Q. [By Shelly's counsel] Okay. So, did Eric have Erica at
    your place overnight on every other weekend then?

    A.   Yes.

    Q.   In Libby?

    A.   Yes.

    Q.   Was this before or after you were charged with
    possession of narcotics?

Eric's counsel objected on relevance grounds and the District Court sustained the objection.

¶30 Shelly argues that Larson's testimony was relevant and probative and that it "would relate to the environment to which Erica was subjected[.]" However, we are unable to ascertain the relevance and probity of the evidence Shelly's counsel sought to introduce because no offer of proof was made to preserve the issue for appeal.

¶31 Rule 103(a)(2), M.R.Evid., provides as follows:
         (a)  . . . . Error may not be predicated upon a ruling which
    admits or excludes evidence unless a substantial right of the party is

affected, and

. . . .

(2)  . . . . In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

The substance of the evidence concerning Larson's alleged possession of narcotics charge was not made known to the District Court by offer and was not apparent.  Absent an adequate offer of proof or an otherwise sufficient record on which to premise a determination on whether relevant evidence was excluded, Shelly may not predicate error on the District Court's ruling and, accordingly, we will not address this issue further.

¶32   Affirmed.

/S/  KARLA M. GRAY


We concur:

/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  JIM REGNIER
/S/  TERRY N. TRIEWEILER