**FILED**
**June 14, 2021**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0350 – *West Virginia Consolidated Public Retirement Board v. Clark et al*

WOOTON, J., concurring, in part, and dissenting, in part:

I concur with the majority's conclusion that respondents, current and former DNR officers and/or their beneficiaries (hereinafter "respondents" and/or "DNR officers"), cannot now be stripped of retirement benefits which were calculated inclusive of their subsistence pay, due to the West Virginia Consolidated Public Retirement Board's failure to timely take corrective action. I respectfully dissent, however, to the majority's determination that the subsistence pay did not constitute compensation in the first instance. The applicable statutory language, along with the treatment and handling of this pay for more than twenty years, undermines any contrary conclusion.

After years of enjoying the benefits of their full retirement income, respondents are informed by the majority that they were overpaid because the statutory subsistence payments were not properly considered "compensation" for purposes of retirement benefits issued under the Public Employee Retirement System ("PERS"). It reaches this conclusion despite the undisputed fact that the subsistence pay otherwise bore all the hallmarks of ordinary compensation for over twenty years, in that it was utilized for purposes of calculating 1) respondents' Federal and State taxable income; 2) the amount respondents were assessed for PEIA insurance premiums; 2) the amount of the DNR and

1

respondents' retirement contributions to PERS;  and 4) the amount of retirement benefits to be paid to respondents under PERS.[1]

The subsistence pay, representing statutory remuneration to DNR officers for telephone services, uniform dry cleaning and meals, was reported on a form W-2 and included in each of respondents' *regular* biweekly paychecks.  Unlike traditional expense reimbursements, respondents were not required to utilize this pay for any particular items, not required to submit expense documentation of any type to receive the pay, and not required to return any unused portions.  In contrast, for actual expenses incurred when working outside of their primary assignment area, respondents were authorized, pursuant to a separate statutory provision, to submit reimbursement vouchers, just as traditional expense reimbursements are typically handled.  *See* W. Va. Code § 20-7-1(h) (2017) ("[A]ctual expenses incurred shall be paid whenever the duties are performed outside the area of primary assignment and still within the state.").  This disparate handling of the subsistence pay and expense reimbursement demonstrates that they are by no means equivalent.  Most notably, however, the subsistence pay was still paid to employees who were on paid annual, sick, or military leave—employees who plainly were incurring no job-related expenses.  Therefore, to suggest that the subsistence pay is merely expense

---

[1] The majority curiously declares that the parties "agree" that the tax treatment of the pay "does not bear on" whether it constitutes pensionable compensation.  Certainly, the Court's analysis must be based upon the applicable statutory language; however, to obstinately disregard the decades-long, "real world" treatment of the subsistence pay as ordinary compensation smacks of artifice.

2

reimbursement in wages' clothing defies reality. The subsistence pay was handled in every meaningful way just as ordinary compensation—issued with no questions asked and no strings attached insofar as an employee was otherwise receiving his or her salary. *See Anderson v. City of Long Beach*, 341 P.2d 43, 46 (Cal. Ct. App. 1959) (finding relevant "how the 'uniform allowance' was computed and paid, or 'treated'" for purposes of determining whether allowance was pensionable compensation).

The Court of Appeals of Oregon found subsistence pay issued under precisely these same circumstances to constitute "wages," highlighting its inclusion with ordinary paycheck wages and lack of any restraints on or prerequisites for the payment:

> [C]laimant was not paid back an equivalent amount of the expenses that he incurred. Rather, for each project, claimant received a set amount of subsistence and travel pay "regardless of any expenditures made during any particular pay period." Claimant was provided that additional payment along with his regular hourly wages in a single paycheck, and the board noted that claimant was "not required to submit receipts," further supporting the conclusion that claimant was not paid back in an equivalent amount based on his specific expenditures.

*SAIF Corp. v. Sparks*, 309 P.3d 174, 177 (Or. Ct. App. 2013). Accordingly, the *SAIF Corp.* court determined that "claimant's subsistence and travel pay were part of the payment that he was 'contractually entitled to receive' pursuant to his employment contract and 'irrespective of any expenses actually incurred.'" *Id.* (footnote omitted); *compare with* N.M. Stat. Ann. § 29-2-13 (West 1989) (providing that "subsistence pay shall be expended only for the purposes allowed and any portion of the uniform allowance or subsistence pay

3

not so spent in each fiscal year shall revert to the general fund.").[2] *Accord Anderson*, 341 P.2d at 45-46 (finding officers' pensionable compensation properly included clothing allowance which "was in fact an increase in the 'salary attached to the rank or position' held by respondents" because allowance "was added to the pay for work done by each employee who worked full time").

In addition to the handling and treatment of the subsistence pay by DNR, it is also clear from the statutory language authorizing the subsistence payments how the Legislature intended the pay to be viewed. The applicable statute, West Virginia Code § 20-7-1(i), provides, in pertinent part, that

> [n]atural resources police officers shall receive, *in addition to their base pay salary*, a minimum *biweekly* subsistence allowance for their required telephone service, dry cleaning or required uniforms, and meal expenses while performing their regular duties in their area of primary assignment in the amount of $60 *per biweekly pay*. . . .

---

[2] Further, the subsistence pay's treatment and handling as ordinary wages is fully consonant with its treatment in other areas of the law. *See In re Marriage of Murphy*, 885 P.2d 440 (Mont. 1994) (finding subsistence pay part of gross income for child support calculations); *Iron Workers Loc. 118, Int'l Ass'n of Bridge & Structural Iron Workers, AFL-CIO v. N.L.R.B.*, 804 F.2d 1100 (9th Cir. 1986) (approving inclusion of subsistence pay in back-pay award in NLRB proceedings).

4

(emphasis added). The critical requirement that the subsistence allowance be paid biweekly makes it a *regularly recurring* payment to which an employee is entitled by virtue of his employment—just as any other wages.[3]

Further, the Legislature's specific reference to the subsistence pay being "in addition to [the officers'] base pay salary," simply put, means merely that the subsistence pay is an addition to their *base salary*, as scheduled in West Virginia Code § 20-7-1c (2017), just as any other salary enhancement. This reference also unquestionably links the subsistence pay to *salary*, in contrast to the standalone expense reimbursements authorized by West Virginia Code § 20-7-1(h).[4] The Legislature could easily have omitted this phrase from the subsistence allowance, leaving the pay to operate as a standalone payment akin to expense reimbursement, yet it deliberately injected the connection to salary. As indicated

---

[3] The majority suggests that had the Legislature wanted to increase the officers' salary by the amount of the subsistence pay, it could have simply increased their base salaries. It fails to explain, however, how mandating the implementation of an increased set amount payable across the board in each biweekly paycheck is not precisely that—a salary increase. This is particularly so when that sum is included in the officers' biweekly paycheck.

[4] In contrast, the majority's discussion of this same language focuses on the phrase "in addition to," positing the exact opposite conclusion—that this phrasing *differentiates* the subsistence pay from the base pay salary. However, West Virginia Code § 20-7-1c provides that DNR officers' base pay salaries may be augmented based upon rank, length of service, and merit—all of which still obviously constitute compensation despite being technically "in addition to" the base pay salary.

This stark contrast in construction merely demonstrates that different readings of this language are entirely plausible, thereby belying the majority's conclusion that the statute's intent is "clearly expressed" and not susceptible to the rules of statutory construction employed by the circuit court. *See* discussion *infra*.

above, subsection (h) separately—and without reference to salary or compensation—provides for reimbursement for "*actual* expenses incurred" when duties are performed outside of an officer's primary assignment area. *Id*. § 20-7-1(h) (emphasis added). This provision therefore differentiates the regularly paid, service-related subsistence pay from irregular, separately reimbursed expenses which do not qualify as compensation under the statute. *See also SAIF Corp*., 309 P.3d at 177 n.1 (distinguishing subsistence pay from "reimburse[ment] for actual expenses").

Moreover, the statutory language defining "compensation" for retirement purposes leads to the same conclusion. West Virginia Code § 5-10-2(8) (2016) defines "[c]ompensation" as "the remuneration paid a member by a participating public employer for personal services rendered by the member to the participating public employer." More importantly, however, this definition specifically exempts from the realm of retirement compensation "[a]ny lump sum or other payments paid to members *that do not constitute regular salary or wage payments*[.]" *Id*. (emphasis added). The statute then goes on to carefully describe the types of "non-regular" payments which do not constitute "compensation" as "[including] attendance or performance bonuses, one-time flat fee or lump sum payments, payments paid as a result of excess budget, or employee recognition payments." *Id*.

It is here where the majority most dramatically misses the mark. In declaring the subsistence payments the type of "other payments" that are excluded from

6

"compensation," the majority glosses over the caveat that such "other payments" do not include "*regular* salary or wage payments." *Id*. (emphasis added).[5] There is no discussion whatsoever of the critical modifier "regular," likely because it is indisputable that the subsistence payments were regularly paid, commingled with, and otherwise uniformly treated as wages. The majority's failure to appreciate the significance of the regularity of payment of the subsistence pay is fully demonstrated in the extra-jurisdictional case upon which it relies.

The majority cites *Hilligoss v. LaDow*, 368 N.E.2d 1365 (Ind. Ct. App. 1977) as support for its conclusion that the subsistence payment is not compensation. However, this reliance fails to acknowledge that the clothing allowance at issue in *Hilligoss* was paid in an "annual cash allowance" and was paid only if police and fire personnel were required to purchase their own clothing. *Id*. at 1371. Therefore, not only was the annual clothing allowance precisely the type of "lump sum" specifically excluded in our statute, its payment was expressly dependent upon an officer incurring an obligation for that expense. More interestingly, however, the *Hilligoss* court contrasted the clothing allowance with longevity pay which it observed was an "integral part of the individual employee's *regular salary, whether or not the city appropriation ordinance designates it as such.*" *Id*. at 1370 (emphasis added). *See also Anderson*, 341 P.2d at 45 (rejecting argument that because

---

[5] In a discussion that manages to be at best circular, the majority merely incorporates its previous conclusion that subsistence pay is not compensation to then conclude, as a result, that it is likewise not a "regular salary or wage payment." *Id*. § 5-10-2(8).

7

clothing allowance was "not provided in the salary ordinance, but a separate one" it was not pensionable compensation).

The majority's disregard for the "regularity" aspect of the analysis permits it to similarly ignore the blatant disparity between the regularly paid subsistence allowances and the types of payments the Legislature described as being excluded from "compensation"—all of which are of an irregular, non-recurring, and extraordinary nature. In addressing the types of irregular "lump sum or other payments" which are not pensionable compensation, the majority first attempts to obscure the issue with misdirection about the nature of the circuit court's error. The majority suggests that the circuit failed to appreciate that simply because the subsistence payments are not specifically identified, they do not necessarily fall outside of the exempted payments described. The majority focuses on the "other payments" and "not limited to" language to insinuate that the circuit court must have viewed the list as exhaustive and failed to consider that the subsistence payment may be the type of "other payments" referenced.

Of course, the circuit court did not overlook or misconstrue this language. In fact, it is precisely because of this language that the circuit court utilized the canons of statutory construction to determine whether the subsistence payments are the type of "other payments" to which the statute is "not limited." As the majority observes, the circuit court invoked the doctrines of *ejusdem generis* and *noscitur a sociis* to conclude that the subsistence pay was not of the same kind or type of payments specifically excluded from

8

compensation under the statute. To defeat the circuit court's sound reasoning, the majority adopts a misguided interpretation of the *ejusdum generis* canon and simply disregards the *noscitur a sociis* canon on the basis that the statutory language is "plain" and therefore eludes construction.

As to the *ejusdem generis* doctrine, the majority states that this canon requires that general words are limited to the "nature or class" of more particularly described persons or things only where the "general words . . . *follow* a list of classes or things." (emphasis added). This restatement of the *ejusdem generis* doctrine, taken from Black's Law Dictionary, does indeed permeate our caselaw. Missing the entire purpose of this canon, the majority concludes that because the general words "lump sum or other payment" *precede* the more particularized list in West Virginia Code § 5-10-2(8), *ejusdem generis* simply does not apply. However, nothing in our caselaw demands that the doctrine be applied so literally and, in fact, it is often employed with the companion *noscitur a sociis* maxim which requires only that general words be construed in light of the surrounding words.[6] This Court has explained this well-understood application of the two maxims:

---

[6] As better explained by one court:

> We are also guided by the doctrine of *ejusdem generis*, which means "of the same kind or class." This doctrine provides that when general expressions such as "including" or "including, but not limited to" precede a list of specific items, the general words are to be interpreted as "words of enlargement and not limitation." When interpreting a non-exhaustive statutory list, "any additional matters purportedly falling within the

(continued . . .)

"The doctrines are similar in nature, and their application holds that in an ambiguous phrase mixing general words with specific words, the general words are not construed broadly but are restricted to a sense analogous to the specific words." *Murray v. State Farm Fire & Cas. Co.*, 203 W. Va. 477, 485, 509 S.E.2d 1, 9 (1998); *see also Vector Co. v. Bd. of Zoning Appeals of City of Martinsburg*, 155 W. Va. 362, 366, 184 S.E.2d 301, 303-04 (1971) ("'The rule is based on the obvious reason that if the legislature had intended the general words to be used in their unrestricted sense they would have made no mention of the particular classes.'"). Significantly, the majority does not even address the patent applicability of the closely-related doctrine of *noscitur a sociis*—which "literally means 'it is known from its associates[]'"—other than to say that the statute requires no construction. *Murray*, 203 W. Va. at 485, 509 S.E.2d at 9.

Upon application of these doctrines, it is evident that subsistence pay is simply not of the "same general nature or class" of the lump sum payments which the Legislature intended to exclude from compensation. *See Marcellus Shale Coal*, 193 A.3d at 472. "[A]ttendance or performance bonuses, one-time flat fee or lump sum payments,

---

definition, but that are not express, must be similar to those listed by the legislature and of the same general class or nature." However, items that are not of the same general nature or class as those enumerated should not be included. The critical inquiry is whether items are of the "same general class or nature" as the included items.

*Marcellus Shale Coal. v. Dep't of Env't Prot.*, 193 A.3d 447, 472 (Pa. Commw. Ct. 2018) (citations omitted).

10

payments paid as a result of excess budget, or employee recognition payments" are markedly different than the *regularly* paid subsistence payments at issue. *See* W. Va. Code § 5-10-2(8). Rather than the "red herrings" the majority declares them to be, these doctrines provide a dispositive construction of the applicable statutory language. Because subsistence pay is completely dissimilar from the type of irregular, extraordinary payments described therein, these doctrines demonstrate that West Virginia Code § 5-10-2(8) does not command the exclusion of subsistence pay from "compensation."

Finally, the fact that subsistence pay is not expressly included in the list of excluded payments cannot be overlooked. The Legislature has expressly excluded certain payments from pensionable compensation on numerous occasions. *See* W. Va. Code § 5-10-2(8) (excluding nonmonetary remuneration from final average salary computation); W. Va. Code § 5-5-6(c)(3) (2009) (excluding unused sick leave from final average salary computation); W. Va. Code § 5-10-22(a) (2009) (excluding lump sum payment of unused, accrued leave from final average salary computation); W. Va. Code § 5-5-3 (2005) (same). Further, it is apparent that the subsistence pay's impact on retirement matters for DNR officers specifically was well within the Legislature's contemplation, as demonstrated by its 2010 amendment making retirement income deductions from federal adjusted gross income inapplicable to DNR officers' pensions under PERS.[7] Had the Legislature seen fit

---

[7] *See* W. Va. Code § 20-7-1(k) ("Notwithstanding any provision of this code to the contrary, the provisions of subdivision (6), subsection c, section twelve, article twenty-one, chapter eleven of this code are inapplicable to pensions of natural resources police officers paid through the Public Employees Retirement System.").

at any point to exclude subsistence pay from compensation, it would have said so expressly as other states have, or, made it payable in a lump sum such that it is necessarily excluded under the statutory language. *See*, *e.g.*, Ala. Code § 36-27-1(14) (2017) ("[T]he term earnable compensation for retirement purposes shall not include subsistence payments that are made to a member[.]"); Nev. Admin. Code § 612.080 (1960) (providing subsistence pay is "not wages" for purposes of unemployment compensation); Iowa Admin. Code § 871-23.3(96) (same).

Accordingly, while I concur in the majority's conclusion that respondents may not be stripped of their retirement benefits, I respectfully dissent to its determination that subsistence pay does not constitute "compensation" under West Virginia Code § 5-10-2(8).